Pittsburgh Railways Co. et al. *v.* P. S. C. et al.

Argued May 4, 1934.

Before
Trexler, P. J., Keller, Cunningham, Baldrige, Stadt-
feld, Parker and James, JJ.

*P. A. Fleger,* and with him *V. W. Thomas* and *E. P.
Griffiths,* for Pittsburgh Railways Company and Pitts-
burgh Motor Coach Company, appellants.—The Com-
mission should have determined whether the applicant
had the power to render the service: Wilson v. The
Public Service Commission, 89 Pa. Superior Ct. 352;
Pennsylvania Utilities Company v. The Public Service
Commission, 69 Pa. Superior Ct. 612; Fogelsville and
Trexlertown Electric Company v. Pennsylvania Power
and Light Company, 271 Pa. 237.

*Samuel Graff Miller,* and with him *Paul H. Rhoads,* Legal Assistants, and *E. Everett Mather, Jr.,* Assistant Counsel and *John Fox Weiss,* Counsel, for The Public Service Commission of the Commonwealth of Pennsylvania, appellee, cited: Schuylkill Railway Co. v. Public Service Commission, 268 Pa. 430; Westside Electric Street Ry. Co. v. Public Service Commission, 91 Pa. Superior Ct. 162; Passyunk Avenue Business Men's Assn. v. Public Service Commission, 73 Pa. Superior Ct. 242.

*Mortimer B. Lesher,* and with him *J. P. Fife,* Solicitors for County of Allegheny, intervening appellee, cited: Wentz v. Philadelphia et al., 301 Pa. 261.

OPINION BY TREXLER, P. J., October 3, 1934:

This is an appeal from the order of the Public Service Commission granting a certificate of public convenience to the County of Allegheny to operate motor buses between the court house situate at Grant Street and Fifth Avenue in the City of Pittsburgh to a park known as North Park located in McCandless and Pine Townships and between the court house and South Park located in Bethel and Snowden Townships.

The report of the commission states that: "The county has acquired these parks under authority of law; it has spent some three million dollars in their acquisition and equipment, not to mention the cost of annual maintenance, operation and rehabilitation. It owns and operates them for the health, comfort, convenience and welfare of its citizens. If given the right to operate, the county will purchase or lease such equipment in type and number as, after investigation, is determined to be most advantageous and economical.

"The application is protested by the Pittsburgh Railways Company, a street railway operating in the

territory; by its affiliate, The Pittsburgh Motor Coach Company, which operates buses in connection with the street railway system; and by the Brentwood Motor Coach Company, also a motor bus utility operating in the county. All three of these protestants are vitally interested in the application, as they would be competitively affected by the county's engagement in the desired service.''

The petition is based under Article 3, Section 3 (d) of the Public Service Act of 1913, July 26, P. L. 1374, 66 PS Sec. 182, p. 556, which requires a municipality to secure the commission's approval before it can enter into competition with a utility then rendering service within the municipality.

In the present discussion we will not consider the question whether the commission was right or wrong in finding that the facts submitted justified the conclusion that the proposed bus line was ''necessary or proper for the service, accommodation, convenience or safety of the public.'' That drops out of the case by reason of the fact that we have all come to the conclusion that the County of Allegheny has no power to run a bus line. The commission took the position that the question of the power of the county was not before it; citing Westside Elec. St. Rwy. Co. v. P. S. C., 91 Pa. Superior Ct. 162, and counsel argues that the members of the board are not called upon to pass upon the powers of the applicant; that they are not a body of men learned in the law and have no judicial functions (admitting, however, that ''at times the corporate power of the parties before it must be considered,'') and that the granting of a certificate of public convenience cannot be made the foundation for judicial determination of what franchises do or do not belong to any corporation interested, and that the law on this phase of the appeal is settled.

There is no doubt that where the question of eminent

domain arises it has been held that the right to condemn should not be passed upon by the Public Service Commission, but what distinguishes these cases from others to which we will refer later is that the order of the Public Service Commission is merely preliminary to the appointment of viewers and the question of applicant's right to take the property can be raised when the proceedings to ascertain the damages are in progress. The approval of the exercise of power is only one step in the course to be followed by the appointment of viewers. See Rieber et al. v. P. S. C., 83 Pa. Superior Ct. 507; Kerry v. W. Penn Power Co., 86 Pa. Superior Ct. 522; Dickel v. Bucks-Falls Elec. Co., 306 Pa. 504, 160 A. 115 and Westside Elec. St. Rwy. Co. v. P. S. C., supra. On the contrary in cases, other than those involving the right of eminent domain, we find abundant authority for the Public Service Commission to pass upon the power of the public company to exercise certain rights. In Wilson v. P. S. C., 89 Pa. Superior Ct. 352, this court took occasion to say: ''Obviously in some complaints and applications, for instance, against rates or service, or for the approval of incorporation, it is sometimes necessary for the commission to consider and pass upon the rights and franchises possessed by the respective corporation involved, but in an application such as we are now considering (an eminent domain case) such questions are not involved.'' There is no question in the present case that the protestants are in competition with the proposed right which the county seeks to establish. It is well settled that the commission has jurisdiction to determine whether corporations have the right to do or not to do the thing for which the commission's approval is sought. See Penna. Utilities Co. v. P. S. C., 69 Pa. Superior Ct. 612; Fogelsville and Trexlertown Elec. Co. v. Penna. P. & L. Co., 271 Pa. 237, 114 A. 822. In Fogelsville v.

P. P. & L. Company, the Fogelsville Company had filed a bill in equity to restrain the power and light company from wrongfully invading its territory. The lower court granted an injunction and on appeal the Supreme Court held that the Fogelsville Company's remedy was before the Public Service Commission and the status quo was preserved in order that such complaint might be filed. We quote the following from that case: "For a proper determination of the many matters submitted, the commission has certain inquisitorial powers which may, to a degree, conflict with those generally understood to be within the purview of quo warranto by the attorney general. In passing on applications or complaints, as the case may be, as to duties, liabilities, powers and limitation of powers of a public service company, inquiry must be made as to the rights or powers of the company to do or not to do the thing applied for or complained about. If they do not have, or, having once had, have since lost the rights and powers by non-user, forfeiture or the like, the commission, in its finding, determination or order, is primarily guided by a consideration of these matters. It may not definitely appear as a fact in the case, its existence not being controverted, but in all cases where a challenge is made to a right, power or franchise, or in all cases of conflicting rights, the commission could not intelligently perform its duties if it did not possess the power to determine to some extent whether or not a franchise existed. Such authority is most essential to the adjudication of many cases before it, and, though not expressly ruled, it was so considered by the appellate courts in Relief Electric L. H. & P. Co.'s Petition, 63 Pa. Superior Ct. 1; Jenkins Twp. v. P. S. C., 65 Pa. Superior Ct. 122; New Castle Elec. Co. v. P. S. C., supra, and Pennsylvania Utilities Co. v. Lehigh N. E. Co., 254 Pa. 289. Quo warranto, therefore, does not oust the commission's

jurisdiction to determine the extent of the powers or rights of any company subject to its regulatory control, for, to satisfactorily answer Section 12 of Article III, these very matters must be made the subject of inquiry.''

The commission having jurisdiction to determine whether a corporation has the right to do or not to do a thing for which the commisson's approval is sought, orderly procedure requires that the commission pass upon that phase of the controversy before the courts adjudge it. The obvious reason for this is stated in St. Clair Boro. v. Tamaqua & Pottsville Elec. Ry. Co., 259 Pa. 462, 468, 103 A. 287; ''Otherwise different phases of the same case might be pending before the commission and the court at one time, which would cause endless confusion.''

The question remains as to whether or not the county has the right to run a bus line? Is any such power granted to it by law? There is no inherent right of a county to engage in such enterprise for a municipal corporation is a creature of statute and its powers must be found in some grant from the Commonwealth or must be implied as an incident to the powers granted and a reasonable requisite to their operation. Wentz v. Phila. et al., 301 Pa. 261, 151 A. 883. The County of Allegheny is a county of the second class and, of course, it is very evident that it has never specifically been granted the power to operate motor buses. The only possible basis for holding that the county has the right to run a bus line must be found in Sections 651 and 663 of the General County Law of May 2, 1929, P. L. 1278, 16 PS pp. 223, 226, which sections are as follows: ''Section 651. Equipment and Maintenance.—The authority to supervise and maintain parks, playgrounds, playfields, gymnasiums, public baths, swimming pools or indoor recreation centers may be vested in any existing body or board, or in a

park board, or recreation board, as the county commissioners may determine. The county commissioners of the county may equip, operate and maintain the parks, playgrounds, playfields, gymnasiums, swimming pools, public baths, or indoor recreation centers, as authorized by this act, and may, for the purpose of carrying out the provisions of this act, employ play leaders, recreation directors, supervisors, superintendents, or any other officers or employes as they deem proper.''

''Section 663. Improvements in Parks.—The said county commissioners shall have the power to govern, manage, operate, lay out, plant and ornament the said public parks, and to maintain the same in good order and repair, and to construct all proper bridges, buildings, roadways, lakes, golf courses, playgrounds and other improvements therein, and to make rules and regulations for the conduct of the patrons thereof, and to repress all disorders therein, under the provisions hereinafter contained.'' A careful reading of the above sections indicates that the action of counties in respect to parks are limited to their equipment, operation and maintenance as parks in which the public may find recreation with the power to construct all proper bridges, etc., and improvements *therein*. It is a stretch of language to hold that this includes the erection of a system of car lines covering many miles of territory designed to carry patrons to the parks. If this power were given to counties they could have a multiple system of street railways running to various playgrounds, gymnasiums, public baths, swimming pools and indoor recreation centers. Any fair reasonable doubt as to the existence of power is resolved by the courts against its existence: Lesley v. Kite, 192 Pa. 268, 43 A. 959, and many others, a recent case being Valley Deposit & Trust Co. of Belle Vernon, 311 Pa. 495, 167 A. 42. In the present case there being no

definite grant of the right claimed, none exists. Since the conclusion that the county has the power which is claimed does not follow from the language employed, the operation of such activities on its part must be denied.

The order of the Public Service Commission is reversed.