## Lang et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued December 15, 1965. Before ERVIN, P. J., WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (WRIGHT and FLOOD, JJ., absent).

*Fred T. Cadmus, III,* with him *David C. Patten,* for appellants.

*Miles Warner,* Assistant Counsel, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Peter Platten,* with him *Frederic L. Ballard, Jack Vickrey, Howard D. McCloud,* and *Ballard, Spahr, Andrews & Ingersoll,* for intervening appellee.

OPINION BY ERVIN, P. J., March 24, 1966:

The present appeals grow out of a complaint filed by Frederic A. Lang and his wife, and Edward James, November 15, 1963, averring that Colonial Pipeline Company of Pennsylvania was about to construct, across their land and near their homes, in Chester County, Pennsylvania, a high pressure 30-inch diameter pipeline to transport gasoline and other highly dangerous petroleum products. The complaint averred the pipe was of insufficient thickness; that inspection pro-

cedures of welds and joints were unsafe, the line laid at an insufficient depth, and that any break in the line would constitute a fire and explosion hazard as to complainants. Complainants asked the Commission to order the utility to stay construction of the pipeline and fix a hearing on the merits, including the utility's right to exercise the power of eminent domain.

On November 30, 1963 Colonial moved to dismiss the complaint and/or stay proceedings citing the pendency in the Court of Common Pleas of Chester County of a suit in equity which it had filed to obtain an injunction restraining two of the complainants from interfering with the construction of its pipeline. Colonial also alleged the Commission lacked jurisdiction over the subject matter of the complaint. In its order of December 9, 1963, the Commission held it had jurisdiction of the complaint and denied the motion to dismiss. The Commission noted that it had certificated Colonial in 1962 as a public utility, for the purpose of transporting petroleum products by pipeline in Pennsylvania, and that Colonial was, under §401 of the Public Utility Law, 66 PS §1171, required to furnish "safe and reasonable service and facilities" and to maintain them in such manner "as shall be necessary or proper for the . . . safety of its patrons, employes and the public."

Colonial filed its answer admitting construction of the 30-inch pipeline which originated in Texas and ran 1600 miles through fourteen states, terminating in the New York Harbor Area, with 30 miles of trunk line located in Pennsylvania. Colonial denied the line was in any way unsafe, or that it lacked the right of eminent domain. The answer stated that radiograph inspections were made of 15-25% of the pipeline welds and that the line was later filled with water and subjected to a hydrostatic test of 125% of maximum operating pressures. Colonial's plans specify a minimum

earth depth of 30 inches. Colonial renewed its motion to dismiss the complaint, adding that its pipeline was operated wholly in interstate commerce and that the relief requested would be an unreasonable burden on interstate commerce.

The Commission held twelve hearings between January 22 and April 16, 1964. Many witnesses for all parties were heard on the issue of the safety of the pipeline in Pennsylvania and testimony consisting of some 2370 pages was produced, along with 175 exhibits. For instance, evidence was produced by technical experts of all parties as to the pressures which the line would sustain under various conditions.

On November 9, 1964, the Commission entered an order sustaining the complaint in part and disposing of the petition to dismiss. The Commission held that Congress had not occupied the field of interstate pipeline safety to such an extent as to prevent the Commission from prescribing "certain safeguards and procedures minimally needed to ensure the safety of the public of Pennsylvania." The Commission also held the equity suit in the Court of Common Pleas of Chester County did not oust it of jurisdiction to prescribe safety regulations as to the construction of the line in Pennsylvania.

The record showed that the greater part of Colonial's pipeline consisted of 40-foot lengths of ductile rolled steel pipe, 9/32 or .281 inch thick. At certain stress points heavier pipe was used. Approximately 700 of the total of 3800 feet traversing the Lang property consists of .312 inch pipe, rather than .281 inch. The pipe, beveled at one end, is electrically welded at the joints. Appellants contend (1) that the joints of the line were not properly designed and were unsuited for a safe welding; (2) that the engineering standards used by Colonial as controlling construction of the line were not correct; and (3) assuming the codes and

specifications were proper, Colonial had not conscientiously complied with these standards of pipeline construction. The Commission found the standards offered by Colonial (ASA-B 31.4) relating to "Oil Transportation Piping" were proper. It rejected the complainants' contention that the standards relating to "Petroleum Refinery Piping" were applicable. Further, the Commission held the Act of May 2, 1929, P. L. 513, as amended, 35 PS §1301 et seq., being primarily a "boiler" safety code, was not applicable to Colonial's line as contended by complainants.

The Commission then proceeded to inquire whether the standards used by Colonial had been conscientiously followed. Both Colonial and complainants had made radiographic inspection of the welds on the pipeline, and the Commission found that substantial defects existed in 10 of the 41 welds inspected on the Lang property.

On November 9, 1964 the Commission entered an order in which it directed Colonial to reinspect the 10 welds *radiographically* and to repair any rejectable defects disclosed, under standards fixed by the American Petroleum Institute Standard 1104. The remainder of the Commission order related to the safety of Colonial's line in Pennsylvania as a whole. On this point the Commission directed Colonial, inter alia, to install strain and pressure gauges in the Pennsylvania line; to periodically measure pipe thicknesses by ultrasonic devices; to file rules incorporating safeguards as to operating pressures and to preserve records of such matters for inspection by the Commission.

Following the Commission order of November 9, 1964, a meeting was held November 23, 1964, between representatives of Colonial and the Commission staff "in order to present the technical detail of exactly how [Colonial] proposed to comply with" that part of the Commission's order directing radiographic reinspection

of the ten defective welds. Complainants were not notified of this meeting and did not attend. On the next day, November 24, 1964, complainants first learned through an official press release that the Commission had, after an informal meeting with representatives of Colonial, changed the November 9, 1964 order so as to permit "sleeving" or the welding of a band around the outside of the pipe joint, instead of radiographic reinspection of the ten welds in question. This sleeving method of "repairing" the ten defective joints was adopted to obviate the necessity of emptying Colonial's line and filling it with nitrogen gas to permit radiographic reinspection, and this "sleeving" procedure was approved by the Commission's staff. The evidence shows, however, that Colonial had full notice of the pending complaint proceedings and was warned not to fill and use the line in Pennsylvania until it had complied with the order of November 9, 1964 as to radiographic reinspection.

Appellants, on November 30, 1964, filed a petition for rehearing with the Commission, alleging the Commission's modification of its November 9, 1964 order deprived them of notice and opportunity to be heard, contrary to §1007, 66 PS §1397, and §1013, 66 PS §1403, of the Public Utility Law; that substitution of "sleeving" prevented reinspection by radiography, and that radiographic inspection of the ten welds was necessary to prevent the possibility of similar defects in other portions of the line in Pennsylvania and that substitution of sleeving for radiography was not a proper method of inspection and repair under A.P.I. Standard 1104. The Commission directed Colonial to hold up compliance with the November 9, 1964 order until complainant's petition had been disposed of.

On December 9, 1964 the Commission entered its second order, here appealed from, denying appellants' petition for a rehearing. The Commission held that its

conference with Colonial's representatives to discuss compliance with the November 9, 1964 order was not a hearing which required that appellants be given notice and opportunity to be heard; that the technical conclusions of the Commission staff resulting in agreement on the change from radiographic reinspection and repair, to sleeving was not a substantive change. The Commission further held that such sleeving of the disputed welds was "as safe as or safer than the radiographic reinspection and repair of the welds" directed in the order of November 9, 1964.

Complainants brought the present appeal December 10, 1964. On December 11, 1964 Colonial filed its petition to intervene as appellee. Colonial also filed a separate appeal at No. 66 March Term, 1965, in order to protect its rights if the Commission's orders should be applied or modified so as to affect its rights as to safety regulations of pipelines in interstate commerce. On December 18, 1964 this Court refused appellants' petition for a supersedeas.

Appellants now urge that the Commission erred in not revoking Colonial's certificate of public convenience issued November 26, 1962, on the ground, inter alia, that appellants received no specific notice of this certificate. This question was not raised in any of the proceedings below and is not properly before this Court: *Middletown Boro v. Pa. P.U.C.*, 143 Pa. Superior Ct. 444, 17 A. 2d 904; *Drexelbrook Associates v. Pa. P.U.C.*, 418 Pa. 430, 212 A. 2d 237, footnote 3 (1965). In any event, appellants' attack on the certificate issued two years before to Colonial is collateral to this complaint proceeding. Appellants had other available remedies. See §1007 of the Public Utility Law, 66 PS §1397, and §1111, 66 PS §1441. The Commission found, on substantial evidence, that Colonial was a public, not a private carrier. Further, the record shows Colonial has a terminus in Pennsylvania. Nor did appellants

show that the Commission should have enjoined the exercise of Colonial's power of eminent domain. Under the circumstances the propriety of the exercise of the power of eminent domain here is a question to be determined in the forum where condemnation takes place: *Pittsburgh Railways Co. v. P. S. C.*, 115 Pa. Superior Ct. 58, 61, 62, 174 A. 670 (1934). Cf. *Balazick v. Dunkard-Bobtown Municipal Authority*, 414 Pa. 182, 199 A. 2d 430 (1964).

Appellants claim that having granted a certificate, the Commission erred in giving qualified approval of construction of Colonial's pipeline by radiographic re-inspection of only ten welds, in the order of November 9, 1964. In this connection appellants urge that the Commission erred in failing to direct radiographic inspection of all joints in the Pennsylvania line on the basis of deficiencies in the X-ray films of 10 joints out of the 41 inspected on the Lang property. The Commission rejected this contention, pointing to the fact that it had directed various other steps in its November 9, 1964 order to insure the safety of the line in Pennsylvania; and also to the fact that Colonial would test the line in Pennsylvania hydrostatically to within 10 per cent of yield strength, and 125% above designed operating pressures. In view of the issues raised by the complaint, which concerned chiefly the safety of the pipeline in the vicinity of complainants' properties, and considering the other safety measures taken by Colonial, and those imposed by the Commission in the order of November 9, 1964, we do not think that the Commission abused its discretion in failing to apply the sampling method of testing to the entire line in Pennsylvania. The Commission's findings, supported by evidence, especially where, as here, there is conflicting expert testimony, are binding upon us and will not be disturbed on appeal: *Pittsburgh Railways Co. v. Pa. P.U.C.*, 198 Pa. Superior Ct. 415, 427, 428, 182 A. 2d 80 (1962).

Appellants claim the Commission erred in changing its original order of November 9, 1964 so as to permit Colonial to sleeve the ten joints on the Lang property instead of reinspection by radiograph. Appellants assert this action of the Commission, after no more than ex parte consultation with Colonial, deprived them of notice and opportunity to be heard. We are of the opinion that there is merit in this contention of appellants. As complainants, appellants had vigorously contested the methods of joint welding and the safety of Colonial's line in the vicinity of their property. Expert testimony of witnesses for all parties, covering some 2370 pages, had been produced. The change from radiographic reinspection to "sleeving" (a procedure not mentioned in the API Standards) was more than an informal meeting to carry out "technical details" of the November 9, 1964 order; it was, as we view it, clearly a substantive change in the order of November 9, 1964. Section 1007 of the Public Utility Code, Act of May 28, 1937, P. L. 1053, 66 PS §1397, provides that the Commission may amend or rescind any order made by it *"after notice and after opportunity to be heard as provided in the case of complaints . . . ."* (Emphasis added) Certainly a hearing was necessary, and appellants, along with all "parties to the proceedings," 66 PS §1397, supra, were entitled to be heard and to present evidence on the question of whether "sleeving" was a safe method of correcting faults found in the ten pipeline joints involved.

On remand the Commission will afford all parties an opportunity to be heard and to present evidence on this question. After reviewing all evidence in the case, the Commission may reach such a result as the evidence warrants. However, until all parties are afforded notice and opportunity to be heard on the question of modification of that part of the November 9, 1964 order relating to reinspection by radiograph, the pro-

ceedings before the Commission are lacking in due process. As stated in *West Penn Power Co. v. Pa. P.U.C.*, 174 Pa. Superior Ct. 123, 131, 100 A. 2d 110: "Again, under rudimentary principles of due process and fair play the Commission cannot subsequently reverse a previous order without giving notice to a utility and an opportunity to be heard. While the Commission has power to rescind or amend any order made by it (section 1007 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1397), the exercise of such function cannot violate fundamental principles of fairness or constitutional guarantees." See also *Dept. of Highways v. Pa. P.U.C.*, 185 Pa. Superior Ct. 418, 138 A. 2d 143 (1958).

In our opinion the Commsision's order of December 9, 1964, dismissing appellants' petition for a rehearing, should be reversed and the record remitted for further proceedings to give all parties a hearing and an opportunity to present evidence relating to any amendment or modification of the November 9, 1964 order directing reinspection of the ten welds by radiograph.

Reversed and remanded for further proceedings in accordance with this opinion.

WATKINS, J., would affirm the order of the Commission.