Westinghouse Electric Corporation, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent; The Bell Telephone Company of Pennsylvania et al., Intervenors.

Argued June 5, 1979, before President Judge Bow-MAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, CRAIG and MACPHAIL. Judges BLATT and DISALLE did not participate.

*Robert H. Griswold,* with him *McNees, Wallace & Nurick,* for petitioner.

*Bohdan R. Pankiw,* with him *Charles F. Hoffman,* Assistant Counsel, *Steven A. McClaren,* Deputy Chief Counsel, and *George M. Kashi,* Acting Chief Counsel, for respondent.

*Richard D. Spiegelman,* Assistant Consumer Advocate, with him *Mark P. Widoff,* Consumer Advocate, for intervenors.

OPINION BY JUDGE ROGERS, July 24, 1979:

In 1976 The Bell Telephone Company (Bell) filed new tariffs with the Pennsylvania Public Utility Commission showing proposed changes in its intrastate telephone rates caculated to produce additional revenues of $137,635,000 and expense savings of $10,585,-000. The PUC suspended Bell's proposed tariff revi-

sions and instituted an investigation. The thirty-seven complaints filed against the new tariffs, including those of the Consumer Advocate and Westinghouse Electric Corporation, were consolidated with the investigation proceedings. By order entered in short form on December 28, 1977 and in long form on April 4, 1978, the PUC approved an increase in revenue of $38,669,000 granting increases to specific services and allocating the remaining revenue deficiency 60 percent to vertical services and 40 percent to basic services.[1] Bell filed tariff revisions, effective February 12 and March 1, 1978 to meet the $38,669,000 revenue deficiency.

In response to Bell's request for modification filed on April 19, 1978 the PUC entered an order on May 11, 1978 approving an additional $9,413,000 in revenue requirements resulting from a correction of technical errors in computing Bell's tax liability made in the April 4, 1978 order. The May 11 order also required Bell to file within 30 days three alternate plans for allocating the additional $9.4 million.[2] At a public meeting held on May 23, 1978 the PUC approved that plan submitted by Bell which allocated the $9.4 million in a ratio of 90 percent to vertical services and 10 percent to basic services.

Westinghouse, a heavy user of vertical services, has filed two petitions for review which we have con-

---

[1] Basic services are those provided generally by the local telephone exchange to all customers, both residential and business. Vertical services supplement basic services and include such things as extension telephone, private branch exchange switch boards (PBX), key telephones, and Centrex.

[2] Plan 1 assigned the additional annual revenue requirement 10 percent to basic services (Metropolitan Area Flat Residence and Extended Flat Business) and 90 percent to vertical services (Centrex, PBX and Key Service). The allocation was 20 percent to basic services and 80 percent to vertical under Plan 2, and 40 percent to basic and 60 percent to vertical under Plan 3.

solidated for briefing, argument and disposition. The first, No. 1346 C.D. 1978, seeks review of the PUC's May 11, 1978 order which modified the April 4, 1978 order by increasing Bell's revenue requirements. The second, No. 1364 C.D. 1978, seeks review of the PUC's "informal order" of May 23, 1978 which approved the allocation of $9.4 million, 90 percent to vertical services and 10 percent to basic services. Westinghouse does not dispute the PUC's allowance of additional revenues in the amount of $9,413,000. It complains that the order of May 11, 1978 and the informal order of May 23, 1978 were invalid because they were entered subsequent to the filing of Bell's petition for review of the PUC's December 28, 1977 short form order and also because Westinghouse was not afforded notice and an opportunity to be heard before the PUC issued the amendatory orders. The Consumer Advocate has intervened and, as does Westinghouse, says that a hearing is necessary on the allocation of the $9.4 million in additional revenues.

The PUC did not lose its power to amend its April 4, 1978 order by the filing of Bell's petition for review. Pa. R.A.P. 1701 provides pertinently:

(a) General Rule. Except as otherwise prescribed by these rules, after an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasi-judicial order is sought, the lower court or other government unit may no longer proceed further in the matter.

(b) Authority of lower court or agency after appeal. After an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasi-judicial order is sought, the lower court or other government unit may:

. . . .

(3) Grant reconsideration of the order which is the subject of the appeal or petition if:

(i) an application for reconsideration of the order is filed in the lower court or other government unit within the time provided or prescribed by law; and

(ii) an order expressly granting reconsideration of such prior order is filed in the lower court or other government unit within the time prescribed by these rules for the filing of a notice of appeal, petition for allowance of appeal or petition for review of a quasi-judicial order with respect to such prior order, or within any shorter time provided or prescribed by law for the granting of reconsideration.

A timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal or petition for allowance of appeal or petition for review of a quasi-judicial order theretofore or thereafter filed or docketed with respect to the prior order, and the clerk of any court in which such an inoperative notice or petition is filed or docketed shall upon praecipe of any party note on the docket that such notice or petition has been stricken under this rule. Where a timely order of reconsideration is entered under this paragraph, the time for filing a notice of appeal or petition for allowance of appeal or petition for review begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the lower court or other government unit.

Bell's request for modification of the April 4, 1978 long form order, filed on April 19, 1978, as provided for at 52 Pa. Code §3.291, was a request for reconsideration contemplated under Pa. R.A.P. §1701(b)(3). The note to Rule 1701 states the purpose of subdivision (b)(3) is to permit a party to file both a petition for review and a request for reconsideration and then if the administrative agency finds the request for reconsideration lacks merit, the "prior appeal paper will remain in effect, and appeal will have been taken without the necessity to watch the calendar for the running of the appeal period." The PUC's May 11, 1978 order granting Bell's petition for modification therefore rendered inoperative Bell's petition for review of the December 28, 1977 short form order.

We agree with Westinghouse, however, that the PUC was required to provide all interested parties with notice and an opportunity to be heard before allocating the $9.4 million increase in revenues. Section 703(g) of the Public Utility Code, 66 Pa. C.S. §703(g) states: "The commission may, at any time, *after notice and after opportunity to be heard as provided in this chapter,* rescind or amend any order made by it. . . ." (Emphasis added.) The PUC action in approving the 90 percent to vertical services and 10 percent to basic services allocation plan for the $9.4 million in additional revenues after the correction of technical errors in the April 4, 1978 order effectively changed the rate structure of a final order which had allocated a remaining revenue deficiency on the basis of 60 percent to vertical services and 40 percent to basic services. This action clearly effected a substantive change in, and not a mere clarification of, a prior order. *Compare Lang v. Pennsylvania Public Utility Commission,* 207 Pa. Superior Ct. 312, 217 A. 2d 750 (1966) *and West Penn Power Co. v. Pennsyl-*

*vania Public Utility Commission,* 174 Pa. Superior Ct. 123, 100 A.2d 110 (1953) *with County of Beaver v. Pennsylvania Public Utility Commission,* 28 Pa. Commonwealth Ct. 511, 369 A.2d 509 (1977).

Accordingly, we enter the following:

ORDER

AND Now, this 24th day of July, 1979, the action of the Pennsylvania Public Utility Commission taken at a public meeting on May 23, 1978 approving a plan for allocating a $9,413,000 increase in revenues in a ratio of 90 percent to vertical services and 10 percent to basic services is hereby vacated and the matter remanded for proceedings conforming to Section 703 of the Public Utility Code, 66 Pa. C.S. §703. The Commission's order of May 11, 1978 is affirmed.

---

MEMORANDUM OPINION AND ORDER

PER CURIAM:

The Bell Telephone Company of Pennsylvania has filed a petition for reargument of the above captioned matter in which we filed our opinion and order on July 24, 1979. Bell principally seeks reargument relative to our holding that PUC's action on Bell's application concerning a $9.4 million alleged oversight in allowance of additional revenues rendered Bell's appeal from the order inoperative pursuant to Pa. R.A.P. 1701(b)(3)(ii). Bell contends that we should have considered Bell's application to have been, not a request for reconsideration, but a request for modification. It seems to us that whatever form Bell's application took, the PUC actually reconsidered its order because it allocated the burden of the additional revenues of $9.4 million among customers differently from the manner in which it had allocated the original allowance and thereby produced a different overall allocation of the total of additional allowed revenues.

In any case, we do not construe Pa. R.A.P. 1701 (b)(3) as rendering inoperative issues on appeal which were not the subject of an application for reconsideration. Indeed, we understand that Bell's claim for the $9.4 million in revenues not allowed in PUC's original order was not raised in Bell's appeal. Surely, Rule R.A.P. 1701(b)(3)(ii) was not intended to render inoperative an appeal of issues which were not the subject of a request for reconsideration; and we certainly did not intend to so hold.

AND Now, this 19th day of September, 1979 Bell's application for reargument is denied.