558 A.2d 914

**SCOTT PAPER COMPANY, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 1988.

Decided May 17, 1989.

112

William T. Hawke, Malatesta, Hawke & McKeon, Harrisburg, Pa., and James A. Corrodi, Deputy Gen. Counsel & Staff Vice President, Philadelphia, for petitioner.

Daniel P. Delaney, Chief Counsel, Lee E. Morrison, Asst. Counsel, Bohdan R. Pankiw, Deputy Chief Counsel, for respondent.

Gerald Gornish, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, for Philadelphia Elec. Co.

David Wersan, Office of Consumer Advocate, Harrisburg, Pa., and Phillip F. McClelland, for Consumer Advocate.

David Kleppinger, McNees, Wallace & Nurick, Harrisburg, for PAIEUG.

Before CRUMLISH, Jr., President Judge, and
CRAIG, DOYLE, BARRY, COLINS, PALLADINO and
SMITH, JJ.

COLINS, Judge.

Scott Paper Company (Scott) petitions for review of an Opinion and Order of the Pennsylvania Public Utility Commission (Commission) entered August 13, 1987. We vacate and remand.

## The Rate Proceeding

On December 30, 1985, Philadelphia Electric Company (PECO), filed a tariff supplement (Supplement No. 18) to its existing electric tariff (Tariff Electric—Pa. P.U.C. No. 26). This tariff supplement included an Auxiliary Service Rider, which contained proposed rates, terms and conditions of electric service to be provided by PECO to self-generating customers (i.e. customers who generate some or all of their own electrical requirements.)[1] Occidental Chemical Corpo-

---

**1.** Commission regulations require electric utilities to offer four types of auxiliary services to "qualifying facilities": supplementary power, back-up power, maintenance power and interruptible power. 52 Pa.Code § 57.35(b).

A "qualifying facility" is defined as a cogeneration facility or a small power production facility which meets the criteria contained in the Federal Energy Regulatory Commission's regulations, codified at 18 CFR Part 292. 52 Pa.Code § 57.31.

Supplementary power, as defined in the Commission's regulations, is "[e]lectric energy or capacity, supplied by an electric utility, regularly used by a qualifying facility in addition to that which the facility generates itself." 52 Pa.Code § 57.31.

Back-up power, as defined in the Commission's regulations, is "[e]lectric energy or capacity supplied by an electric utility to replace energy or capacity ordinarily generated by a qualifying facility's own generation equipment which equipment is not available during an unscheduled [i.e., forced or unanticipated] outage of the facility." 52 Pa.Code § 57.31.

Maintenance power, as defined in the Commission's regulations, is "[e]lectric energy or capacity supplied by an electric utility during scheduled outages of the qualifying facilities." 52 Pa.Code § 57.31.

Interruptible power, as defined in the Commission's regulations, is "[e]lectric energy or capacity supplied by an electric utility subject to interruption by the electric utility under specified conditions." 52 Pa.Code § 57.31.

Back-up power and maintenance power can be provided on either a "firm" or an "interruptible" basis. Firm service requires the electric utility to provide power whenever the customer demands it. Interruptible service allows the electric utility to interrupt service to the qualifying facility when it experiences a capacity shortage on its system.

ration (Occidental) filed a complaint against the proposed tariff and the Commission on February 20, 1986, entered an order suspending the effective date of the proposed Auxiliary Service Rider until June 27, 1986, in order to open an investigation into the reasonableness of its rates and provisions, as well as into the reasonableness of PECO's then existing Auxiliary Service Rider. Subsequent to the opening of this investigation Scott filed its complaint against the proposed tariff.[2]

Evidentiary hearings were held before Administrative Law Judge (ALJ) Joseph Klavekorn on April 17 and 18, 1986. Expert testimony concerning the proposed rates and provisions contained in PECO's proposed Auxiliary Service Rider was presented by various complainants and intervenors, including Scott, Occidental, the OCA, Einstein, Penn, Amtrak, and the Trial Staff. The Trial Staff offered expert testimony that there should be a limit upon the number of hours of back-up power a self-generating customer could purchase at the back-up power rate when that power was supplied on a "firm" basis.[3] However, there was no evidence presented indicating that a similar limit or "cap" should be applied to back-up power taken on an "interruptible" basis. This limitation or "cap" would not be upon the amount of back-up power a qualifying facility could take, but instead, would be upon the amount of back-up power a qualifying facility could take at a certain rate. Once the limitation had been exceeded, back-up power purchased would be priced at supplementary power rates which are substantially higher than back-up power rates.

The parties' positions regarding what should be the appropriate rates, terms and conditions of auxiliary services,

2. Petitions to intervene were filed by Albert Einstein Healthcare Foundation (Einstein), Del–AWARE, Unlimited, Inc., the Governor's Energy Council (GEC), Philadelphia Area Industrial Energy Users Group (PAIEUG), the National Railroad Passenger Corporation (Amtrak), the Office of Consumer Advocate (OCA), and the Trustees of the University of Pennsylvania (Penn). The Commission's Trial Staff entered an appearance as a party in the proceeding. *See* Section 306 of the Public Utility Code (Code), 66 Pa.C.S. § 306.

3. PECO's Supplement No. 18 contained no such limitation.

including this back-up power use limitation, varied. However, in an attempt to resolve the myriad of issues and positions asserted, a number of the parties, including Scott, the OCA, Einstein, Penn, Amtrak, GEC, and the Trial Staff signed a "Stipulation Agreement" which represented a combination of the divergent positions taken. This Stipulation Agreement contained a limitation upon the amount of firm back-up power which could be taken by a qualifying facility at the back-up power rate, but no limitation upon the amount of interruptible back-up power which could be taken at the back-up power rate. Occidental and PAIEUG disagreed with certain aspects of the Stipulation Agreement and PECO opposed it entirely.

Briefs and reply briefs were filed and on May 22, 1986, the ALJ issued a Recommended Decision wherein he recommended that PECO's proposed Supplement No. 18 not be permitted to go into effect. He found that the proposed Supplement No. 18, in addition to PECO's then existing Auxiliary Service Rider contained rates which were "fatally flawed by the failure of the company to recognize that the costs imposed on the PECO system by back-up and maintenance power customers are not the same as the costs imposed by full requirements customers." (Reproduced Record (RR) at 112a.) The ALJ found that the Stipulation Agreement, with some minor modifications, set forth rates and terms which represented the best resolution of the issues. Accordingly, he recommended that the Commission adopt the Stipulation Agreement, as modified, and direct PECO to file tariff supplements for auxiliary services prepared in accordance with his Recommended Decision.

Upon review of the ALJ's Recommended Decision, the Commission entered an Opinion and Order on October 9, 1986 (rate case order), adopting that decision with certain specifically noted modifications not involving the firm back-up power limitation. The rate case order directed PECO to file a tariff or tariff supplement in accordance with the terms and conditions of such order.

On November 7, 1986, PECO filed a new proposed tariff supplement (Supplement No. 28) to its electric tariff, expressly stating that its filing "includes a revised Auxiliary Service Rider with provisions which are in compliance with the Commission's Order of October 9, 1986 at Docket No. R–850290." (RR at 127a.)[4]

On November 21, 1986, Occidental filed a motion to reject Supplement No. 28, contending that the supplement was not in compliance with the Commission's rate case order. On December 19, 1987, Scott filed objections to PECO's compliance filing, also submitting that it did not comply with the Commission's rate case order. Scott asserted that the Commission should direct PECO to amend Supplement No. 28 with regard to a particular provision contained in that supplement. Specifically, this provision, contained in the Auxiliary Service Rider, stated: "[b]ack-up Power shall be limited to 15% of the hours in any twelve-month period after which any additional power utilized shall be billed as Supplementary Power." (RR at 131a.) In its objections, Scott contended that this provision erroneously restricted a self-generator's use of back-up power, whether that power was taken on a firm basis or on an interruptible basis. Scott argued that this 15% limitation on interruptible back-up power use was contrary to the express agreement of all the parties who entered into the Stipulation Agreement, the ALJ's adoption of that agreement, and the rate case order adopting the ALJ'S Recommended Decision. Scott maintained that the Stipulation Agreement, the ALJ's Recommended Decision, and the rate case order, all expressly provided that the 15% limitation was to apply *only to the use of firm back-up power* and *not* to the use of *interruptible* back-up power. (RR at 137a.) The Commission entered its Opinion and Order on August 13, 1987 (compliance order) which directed PECO to amend Supplement No. 28 in certain respects. However, this order did not direct PECO to amend the Auxiliary Service Rider contained in Supple-

4. This filing which was in response to the rate case order will be referred to herein as Supplement No. 28 or the compliance filing.

ment No. 28 to indicate that the limitation on back-up power use should only be applicable to back-up power taken on a firm basis.[5]

Scott has filed the instant Petition for Review contending that the Commission's August 13, 1987 Opinion and Order constitutes an amendment of the Commission's rate case order of October 9, 1986, in violation of the constitutional and statutory prohibitions against amending a prior opinion and order without affording appropriate notice and a meaningful opportunity to be heard.   In addition, Scott contends that the Commission's August 13, 1987 Opinion and Order is not supported by substantial record evidence, and is arbitrary, capricious and unreasonable.[6]

### The 15% limitation

Further discussion of the factual background with regard to the 15% limitation is necessary to the clear resolution of the issues raised in Scott's petition for review.   Our examination of the various documents filed with the Commission, the Recommended Decision of the ALJ, as well as the rate case order, indicates that throughout the rate proceeding, the 15% limitation was consistently referred to as being applicable solely to *firm* backup power usage.

**5.**   Chairman Shane filed a dissenting opinion specifically addressing the applicability of the back-up power limitation to both firm and interruptible back-up power usage.   He stated that the application of the 15% limitation to interruptible back-up power was contrary to and inconsistent with the evidence, Stipulation Agreement, Recommended Decision and Commission Opinion and Order of October 9, 1986.   In addition, he emphasized that the rate case order provided for a 15% cap on *firm* back-up power only and that the Commission, in agreeing with PECO that the cap should be applied to interruptible back-up power as well, was changing its position without affording the parties a meaningful opportunity to be heard.   He was of the opinion that the filing of motions in objection to PECO's compliance filing did not fulfill the parties' due process rights of notice and a full opportunity to be heard.

**6.**   Scott has made it patently clear that it is not contesting the specific ordering paragraphs of the Commission's August 13, 1987 Opinion and Order.   Instead, Scott is contending that the Commission erred in failing to direct PECO to amend the Auxiliary Service Rider in Supplement No. 28 to impose the 15% limitation upon *firm* back-up power only.

As previously noted, PECO's Supplement No. 18 contained no limitation on the amount of back-up power to be taken by a self-generating customer at a certain rate.[7] The concept of imposing such a limitation upon back-up power was first introduced by the Trial Staff through the Joint Direct Testimony of its expert witnesses at the evidentiary hearings of April 17 and 18, 1986. As part of that testimony, Trial Staff introduced an exhibit in the form of a proposed tariff for auxiliary services as an alternative to that presented by PECO in Supplement No. 18. Contained in that exhibit was the following provision pertaining to the rates and billing of back-up power: "[t]he taking of *firm* Backup power more than 10% of the time during a 12 month period will result in the establishment of a firm Supplementary power demand limit." (RR at 35a.) (Emphasis added.) On cross-examination by PECO's counsel, Mr. Gornish, Trial Staff's expert Robert Rosenthal testified as follows:

Mr. Gornish: So you are saying that if a cogenerator would have a great deal of need for backup that the company should in a sense say: we're not going to give you backup any more, but we're going to make you now take this as a supplemental power, even though this customer has a cogeneration facility?

Mr. Rosenthal: Under our proposal if you are contracting for firm backup power and consuming it more than ten per cent of the time during an annual period, that will result in the establishment of a firm supplemental power demand, which would entail then normal charges under the applicable rate schedule.

(RR at 48a–49a.)

This limitation on *firm* back-up power was incorporated into the Stipulation Agreement, although the 10% figure

7. We must re-emphasize that the limitation does not prohibit a self-generating customer from obtaining back-up power during unscheduled outages, but instead, the limitation is with regard to the amount of back-up power which can be purchased at the rate contained in the Auxiliary Service Rider. In other words, once the limitation has been exceeded, any further back-up power purchased by the qualifying facility will be priced at supplementary power rates which are substantially higher than back-up power rates.

referred to by Trial Staff in the foregoing testimony was increased to 15%.[8] The language of the agreement reads: "[t]aking *firm* back-up power for more than 15% of the time during a twelve-month period will result in establishment of a firm supplementary power demand limit." (RR. at 120a.) (Emphasis added.)

Further reference was made to a limit on the taking of *firm* back-up power at a certain rate in Trial Staff's Reply Brief to PECO's Initial Brief filed with the ALJ:

[a]lthough we agree in principle with limitations on the amount of back-up power available at the price set forth in the Stipulation, we disagree with PECO about the specifics of such limitations. First, the limitation should apply only to *firm* back-up, since interruptible back-up power does not impose costs upon the utility system to the degree firm power does. Supplement No. 18 contained no proposal for limits on interruptible back-up power, so there would appear no reason to now add them. Second, Trial Staff has reconsidered its original proposal and believes that firm back-up at the rates proposed should be available up to 15% of the time. This would encourage shorter or lower demand level outages. This limitation appears in paragraph fifteen of the Stipulation.

(RR at 67a–68a.) (Emphasis in original.)

In his Recommended Decision, the ALJ discussed the limitations to be placed upon use of back-up power. He noted: "[u]nder the Stipulation Agreement, taking *firm* back-up power for more than 15% of the time during a twelve-month period will result in establishment of a firm supplementary power demand limit." (RR at 100a.) (Emphasis added.) He recommended that the Commission adopt the Stipulation Agreement with minor modifications not affecting the 15% limitation on firm back-up power use.

8. The increase from 10% to 15% was explained by Trial Staff in its Main Brief filed with the ALJ as being more equitable because a 10% limit represented an average forced outage figure which some, if not most, utility plants would exceed.

The Commission, in its rate case order, repeated the ALJ's notation quoted above. (Commission Opinion and Order, entered October 9, 1986, at 13, attached as Appendix "C" to Scott's Brief.)[9] It further noted, in response to the exceptions filed by Occidental: "[a]fter consideration of the Exceptions of Occidental, we find that the ALJ adequately considered the issues of the 15% "cap" on *firm* back-up power, .... We therefore adopt the recommendations of the ALJ and deny Occidental's Exceptions." (Commission Opinion and Order, entered October 9, 1986, at 20, attached as Appendix "C" to Scott's Brief.) (Emphasis added.) Ultimately, the Commission adopted the ALJ's Recommended Decision with certain modifications which did not affect the 15% limitation on the use of firm back-up power. (Commission Opinion and Order, entered October 9, 1986, at 24–25, attached as Appendix "C" to Scott's Brief.)

However, in its compliance filing, PECO inserted the aforementioned provision in its Auxiliary Service Rider, which provided for a limit on both interruptible and firm back-up power usage. (*See* p. 5 of this opinion for actual text.) As previously noted, in its Opinion and Order of August 13, 1987, the Commission, by a 2–1 vote, with Chairman Shane dissenting, refused to direct PECO to amend the Auxiliary Service Rider contained in Supplement No. 28 to indicate that the limitation would apply solely to firm back-up power usage.

## Discussion

■ We shall first address the issue of whether the Commission's August 13, 1987 Opinion and Order constitutes an amendment of the Commission's Opinion and Order of October 9, 1986, in violation of the constitutional and statutory prohibitions against amending a prior opinion and

9. The parties have filed a Joint Stipulation of the Certified Record, pursuant to Pa.R.A.P. 1952(b). A copy of the Commission's Opinion and Order entered October 9, 1986, is attached as Appendix "C" to Scott's Brief and is so referenced at page 126a of the Reproduced Record.

order without affording the parties appropriate notice and a meaningful opportunity to be heard.

We agree with Scott that the Commission was required to provide all interested parties with notice and an opportunity to be heard before expanding the application of the 15% limitation to include interruptible back-up power. Section 703(g) of the Code, 66 Pa.C.S. § 703(g) provides in pertinent part: "[t]he commission may, at any time, after notice and after opportunity to be heard as provided in this chapter, rescind or amend any order made by it."

The Commission, in its August 13, 1987 Opinion and Order, stated:

[w]e agree with PECO that the 15% limitation should apply to both firm *and* interruptible back-up power. The issue is availability of back-up power, not a pricing distinction between firm back-up and interruptible back-up. There is no reason to allow unlimited interruptible back-up power simply because there is a slight chance that it may be interrupted. Since the 15% limitation will apply to both firm and interruptible power, there is no need for PECO to amend its Auxiliary Service Rider with regard to back-up power.

(Commission Opinion and Order of August 13, 1987 at 6, attached as Appendix "A" to Scott's Brief.) In specific response to Scott's objections to PECO's compliance filing, the Commission stated:

[w]e have thoroughly discussed this issue *supra,* in response to Occidental's objection to Supplement No. 28 on the same point. As noted above, we have determined that the 15% limitation should henceforth apply to *both* firm and interruptible back-up power. As we stated above, there is no reason to permit unlimited interruptible back-up power simply because there is a slight chance that it may be interrupted and is therefore priced less than firm back-up power.

(Commission Opinion and Order dated August 13, 1987, at 21, attached as Appendix "A" to Scott's Brief.)

This action by the Commission effected a substantive change in its prior Opinion and Order of October 9, 1986, wherein the 15% limitation was applied only to firm back-up power usage. The application of this limitation to both firm and interruptible back-up power could serve to increase substantially the cost of power to an interruptible customer such as Scott. Clearly, this amendment by the Commission affects the substantive rights of interruptible customers, in particular, Scott. Such a change by the Commission is not merely a clarification of the rate case order and is, therefore, unlawful absent notice and an opportunity to be heard.

It is well-established that although an administrative agency may clarify a prior order without affording prior notice and an opportunity to be heard to interested parties, it may not effect a substantive change of a prior order without doing so. *Westinghouse Electric Corp. v. Pennsylvania Public Utility Commission,* 44 Pa.Commonwealth Ct. 407, 404 A.2d 712 (1979); *compare Lang v. Pennsylvania Public Utility Commission,* 207 Pa.Superior Ct. 312, 217 A.2d 750 (1966) and *West Penn Power Co. v. Pennsylvania Public Utility Commission,* 174 Pa.Superior Ct. 123, 100 A.2d 110 (1953).

Support for our holding is found in the direct testimony of the Trial Staff's witnesses, the briefs filed by Trial Staff, the Stipulation Agreement, the ALJ's Recommended Decision, and finally, the Commission's Opinion and Order of October 9, 1986.[10] All of these make express reference to a limit only upon *firm* back-up power. PECO's compliance filing simply did not comply with the Commission's rate case order. The Commission, in ruling on this compliance filing in its August 13, 1987 Opinion and Order, recognized that all of the previous documents submitted in the proceeding expressly provided for a 15% limitation application only to *firm* back-up power. However, the Commission then proceeded to conclude that this 15% cap should be applied regardless of the nature of the back-up power, firm or

10. Each of these is discussed thoroughly in the previous portion of this opinion and we shall not here reiterate the text of that evidence.

interruptible. The sole reason enunciated by the Commission for this change was that there was no reason to allow unlimited interruptible back-up power simply because there was a slight chance that it may be interrupted.

The Commission's reasoning behind the change is immaterial, as it was unlawful for the Commission to effect this substantive change absent notice to the parties as well as a full opportunity to be heard. The Commission failed to give any notice that it was going to apply the 15% limitation to interruptible back-up power. Further, it failed to afford Scott any meaningful opportunity to be heard on the question of whether the limitation should be extended to the use of interruptible back-up power. We do not agree with the Commission's contention that Scott's opportunity to be heard was fulfilled by its filing of objections to PECO's compliance filing.

Here, we have the consistent application of the 15% limitation to firm back-up power only throughout the course of these proceedings. The Commission, in its rate case order, made no reference to a cap being placed upon interruptible back-up power. Its subsequent compliance order is not consistent with the rate case order. The parties should have been afforded the opportunity to present evidence upon this issue. *See Smith v. Pennsylvania Public Utility Commission,* 192 Pa.Superior Ct. 424, 162 A.2d 80 (1960).

Scott's additional argument that the record is devoid of substantial evidence to support the Commission's August 13, 1987 Opinion and Order is well-founded. The law is clear that the Commission's rate determinations must be based upon substantial record evidence. *Barasch v. Pennsylvania Public Utility Commission,* 111 Pa.Commonwealth Ct. 339, 533 A.2d 1108 (1987). Further, as pointed out by Scott in its Brief, this principle has been applied specifically to rate structure proposals contained in a utility's compliance filing. *See City of Pittsburgh v. Pennsylvania Public Utility Commission,* 178 Pa.Superior Ct. 46, 112 A.2d 826 (1955). Our review of the record reveals no evidence to support the Commission's decision to extend the back-up power limitation to interruptible usage. PECO's

arguments in support of the extension of the limitation to interruptible back-up power, contained in its documents submitted in support of its compliance filing, do not constitute substantial evidence of record upon which the Commission could base its decision. This issue was never fully developed on the record.

## Conclusion

In accordance with the foregoing discussion, we vacate the Opinion and Order of the Commission dated August 13, 1987, only insofar as it extends the 15% limitation to interruptible back-up power. We remand to the Commission and direct that it hold hearings on this issue so that the parties may present evidence.

## ORDER

AND NOW, this 17th day of May, 1989, the Opinion and Order of the Pennsylvania Public Utility Commission, dated August 13, 1987, is vacated only insofar as it extends the .15% limitation to interruptible back-up power. We remand to the Commission and direct that it hold hearings so that the parties may present evidence on this issue.

Jurisdiction relinquished.