Irwin A. POPOWSKY, Petitioner,

v.

PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 12, 2002.

Decided July 17, 2002.

Reargument and/or Clarification Denied Sept. 19, 2002.

Irwin A. Popowsky, Harrisburg, for petitioner.

Matthew Totino, Harrisburg, for respondent.

Thomas J. Sniscak, Harrisburg, for intervenor, Emporium Water Co.

Before COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Irwin A. Popowsky, acting as Consumer Advocate (Consumer Advocate), petitions for review of the June 21, 2001 order of

the Pennsylvania Public Utility Commission (Commission), approving the Joint Petition for Full Settlement (Joint Petition) filed by Emporium Water Company (Utility)[1] and the Commission's Law Bureau (Law Bureau, collectively, Joint Petitioners).

On March 31, 2000, the Utility filed Supplement No. 4 to Tariff Water Pa. P.U.C. No. 5 to become effective May 31, 2000. The Supplement proposed an increase in rates calculated to produce $259,937 in additional annual revenue, based on a future test year ending September 30, 2000. The proposed increase would have resulted in an average 40.3% increase in each residential customer's quarterly bill from $58.25 to $81.75.

On May 11, 2000, the Commission initiated an investigation into the Utility's proposed rate increase, along with its existing rates. Numerous parties, including the Borough of Emporium and the Consumer Advocate, filed Formal Complaints to the proposed rate increase alleging, *inter alia,* that the proposed rates, rules and regulations were unjust, unreasonable and in violation of the law. The Commission's Office of Trial Staff (OTS) entered an appearance in the proceeding pursuant to 66 Pa.C.S. § 306(b).[2] After attempts to resolve the dispute through settlement discussions and the mediation process were unsuccessful, an evidentiary hearing was held before Administrative Law Judge James D. Porterfield (ALJ) on October 26 and 27, 2000, at which the Utility, OTS and the Consumer Advocate participated.

At the outset of the hearing, the Utility amended its expense claim to remove $127,259 representing assessments imposed on the Utility by the Pennsylvania Department of Revenue for the Public Utility Realty Tax (PURTA). Removal of that expense reduced the total increase in revenue sought by the Utility through the rate increase from $259,937 to $115,075. Before the ALJ, the Utility offered the testimony of a number of consultants who testified as to the rate base, revenue and expense claims of the Utility, the history of the Utility, and the fair rate of return sought by the Utility pursuant to its proposed rate increase.

In opposition, the OTS offered the testimony of analysts employed by the Commission, who testified as to rate of return, including capital structure, the cost of common equity, and the overall fair rate of return for the Utility, operating and maintenance expenses and the Utility's rate base and rate structure. The Consumer Advocate offered the testimony of its analyst, who testified as to her review and analysis of the elements of rate base, net operating income and capital structure for the Utility, as well as an outside consultant who testified as to the cost of equity appropriate for the Utility, the overall cost of capital and the cost of capital.

1. The Utility began furnishing water service to the public in 1886. Currently, it furnishes water service to approximately 1,557 customers, located in the Borough of Emporium and parts of Shippen Township, Cameron County, Pennsylvania.

2. That section provides, in part:
   The Office of Trial Staff shall be responsible for and shall assist in the development of, challenge of, and representation on the record of all matters in the public interest in all commission proceedings except those involving transportation, safety, eminent domain, siting, service issues having no impact on rates and ability to pay, provided that the Director of Trial Staff may petition the commission or may be directed by the commission to intervene to protect the public interest in any proceeding involving transportation, safety, eminent domain, siting, service issues having no impact on rates and ability to pay.

Finding that the Utility's use of its proposed hypothetical capital structure for ratemaking purposes would not result in just and reasonable rates, and that use of its actual capital structure would create an adverse business or financial risk that it did not prudently incur, the ALJ rejected the Utility's proposal to use a hypothetical capital structure and adopted its actual capital structure for ratemaking purposes. Based on that finding, the ALJ recommended, *inter alia*, that the Utility not be permitted to place into effect the rates contained in Supplement No. 4 to Tariff Water Pa. PUC No. 5 because those rates were unjust, unreasonable or unlawful. He further recommended that the Utility be directed to file tariffs or tariff supplements containing proposed rates, provisions, rules and regulations consistent with his findings and designed to produce no more than $668,489 in annual base rate operating revenue. Each of the parties filed Exceptions and/or Reply Exceptions to the ALJ's Recommended Decision.

On March 8, 2001, the Commission entered an order granting the Utility an additional $33,371 in annual operating revenue and $134,361 in annual operating income. The Commission also affirmed the ALJ's use of the Utility's actual capital structure for ratemaking purposes rather than the hypothetical capital structure as requested by the Utility, concluding that the hypothetical capital structure would be unfair to ratepayers in that they would be required to pay a rate of return of 12% on nearly 18% of the Utility's rate base, when, in fact, that rate base was financed by debt that costs only 1%. The Commission also denied the Utility's claim for an additional $15,000 in rate case expenses. Under the Commission's approved rate increase, a typical metered customer's quarterly bill would increase from approximately $58.25 to $61.26, or 5.2%. The Utility then filed a Petition for Review with this Court on March 16, 2001.[3] Acting in its representative capacity, the Law Bureau filed a Praecipe for Appearance on behalf of the Commission on March 23, 2001.

Without notifying the Consumer Advocate or any other party to the rate proceeding, the Law Bureau and counsel for the Utility began negotiations to reach an agreement to settle the appeal. On May 29, 2001, the Utility and the Law Bureau filed a Joint Petition for Full Settlement of the Utility's appeal at No. 581 C.D. 2001. The Joint Petition proposed that the Utility be permitted to file a tariff supplement with rates sufficient to collect an additional $24,129 in annual operating revenue on top of the $33,371 increase previously approved by the Commission; a hypothetical capital structure of 55% debt–45% common equity be used in determining overall rate of return; a stay under which the Utility would not seek a general rate increase prior to January 2003; the Utility would use best efforts to secure financing from PennVest to fund the dam, intake and storage tank improvement project and provide annual reports to the Commission of its request and status of the project; if those loans were secured, the Utility would obtain a rebuttable presumption to use a hypothetical capital structure in the next general rate increase proceeding; and those portions of the Commission's March 12, 2001 order regarding denial of the Utility's claim for updated rate case expense would be vacated.

Copies of the Joint Petition were served on the parties of record to the Utility's base rate proceeding, including the Con-

---

**3.** Because it was not aggrieved by the Commission's March 12, 2001 order, the Consumer Advocate did not appeal that decision; however, intending to support the Commission in defense of its March order, it filed a Notice of Intervention.

sumer Advocate, OTS and Borough of Emporium. By Secretarial Letter dated May 30, 2001, the Commission advised each of those parties of the filing of the Joint Petition and requested that any comments on the proposed settlement be filed with the Commission's Secretary Bureau by 1:00 p.m. on June 8, 2001. The Consumer Advocate and OTS filed timely comments opposing the Joint Petition and the Utility filed timely comments in support of the Joint Petition. Additionally, the Borough of Emporium submitted a letter dated June 7, 2001, objecting to the adoption of the Joint Petition.

On June 21, 2001, the Commission entered an order adopting the Full Settlement attached to the Joint Petition in its entirety, finding it to be in the public interest. Adopting the Full Settlement, the Commission amended its March 8, 2001 order as necessary to effectuate and implement the settlement agreement as set forth in the Joint Petition, effective upon the Utility's withdrawal of its Petition for Review filed with this Court at No. 581 C.D.2001. This appeal followed.

The Consumer Advocate's main contention is that the Commission's June 21, 2002 order approving the Settlement Petition submitted by the Law Bureau and the Utility violated the due process rights of the remaining parties to the Utility's rate proceeding because, although those parties had a direct interest in any rate proceedings involving the Utility, they were not permitted to participate nor were they even made aware of any negotiations taking place.[4] It further contends that the Commission's negotiations through its Law Bureau with the Utility and the subsequent order approving the settlement was contrary to Pa. R.A.P. 1701(a)[5] in that after a petition for review of a quasijudicial order is sought, the government agency may no longer proceed further in the matter. It argues that at the time the Utility filed its Petition for Review with this Court on March 12, 2001, the Commission no longer had jurisdiction over any issues relating to the Utility's proposed rate in-

---

4. The Consumer Advocate also contends that the Commission's action through its Law Bureau violated the parties' and the ratepayers' due process rights because when it through its Law Bureau negotiated a settlement, it compromised its ability to be an impartial adjudicator. *See Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992). It argues that the Law Bureau acted both as an adjudicator advising the Commission with regard to the Utility's rate relief case as well as a prosecutor by representing the Commission on appeal before this Court. *See Horn v. Township of Hilltown*, 461 Pa. 745, 337 A.2d 858 (1975). The Commission, however, contends that because appropriate internal "walls of division" were created in that the Law Bureau negotiated and signed the proposed settlement and then the Joint Petition was referred to a separate Commission bureau, the Office of Special Assistance (OSA), who advised the Commission on the merits of the proposed settlement, no commingling of duties or bias within the Commission oc-

curred. *See* 66 Pa.C.S. § 308. The Consumer Advocate raises a substantial commingling issue and we are troubled by the conduct of the Commission and its Law Bureau undertaking *ex parte* contacts with the Utility, something that would have been unethical for the Commission or any of its members to do, as well as the conduct of the Law Bureau in acting as a proponent for the proposed settlement after it had entered its appearance as the Commission's attorney. However, because of the way we have resolved this matter, we need not address whether that conduct precluded the Commission from serving as an impartial decision-maker.

5. Pa. R.A.P. 1701(a) provides:

(a) **General Rule.** Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

crease pursuant to Pa. R.A.P. 1701, and, therefore, was without authority to approve the Settlement Petition submitted by the Utility and the Law Bureau or take any further action at all with regard to the Utility's proposed rate increase.

The Commission, however, contends that the modification of it's March 8, 2001 order was lawful pursuant to Section 703(g) of the Public Utility Code, 66 Pa. C.S. § 703(g), which allows it to rescind or amend any order it has made at any time.[6] In effect, the Commission argues that once it enters an order in a rate proceeding, it may, at any time, change that order by giving the parties to the rate proceeding notice of the change and an opportunity for the parties to submit comments.[7]

■ Section 703(g) of the Public Utility Code provides:

Rescission and amendment of orders. The commission may, at any time, **after notice and after opportunity to be heard as provided in this chapter,** rescind or amend any order made by it. Any order rescinding or amending a prior order shall, when served upon the person, corporation, or municipal corporation affected, **and after notice thereof is given to the other parties to the proceedings,** have the same effect as is herein provided for original orders. (Emphasis added.)

■ The main effect of this provision is that prior orders of the Commission have no preclusive effect on the Commission from taking action, even though they have issued an order governing the same matter and involving the same parties. *See City of Pittsburgh v. Pennsylvania Public Util-*

---

6. 52 Pa.Code § 5.572 sets forth the types of petitions for relief that may sought by a party following a final decision of the Commission. That section provides:

(a) Petitions for rehearing, reargument, reconsideration, clarification, rescission, amendment, supersedeas or the like shall be in writing and shall specify, in numbered paragraphs, the findings or orders involved, and the points relied upon by petitioner, with appropriate record references and specific requests for the findings or orders desired.

(b) A copy of every petition covered by subsection (a) shall be served upon each participant to the proceeding.

(c) Petitions for reconsideration, rehearing, reargument, clarification, supersedeas or others shall be filed within 15 days after the Commission order involved is entered or otherwise becomes final.

(d) Petitions for rescission or amendment may be filed at any time according to the requirements of section 703(g) of the act (relating to fixing of hearings).

(e) Answers to a petition covered by subsection (a) shall be filed and served within 10 days after service of a petition.

(f) Subsections (a) (e) supercede 1 Pa.Code § 35.241 (relating to application for rehearing or reconsideration).

7. The Commission further argues that its June 21, 2001 order did not violate Pa. R.A.P. 1701 because the effectiveness of that order was conditioned upon Emporium's withdrawal of its Petition for Review to this Court consistent with our holding in *Tripps Park Civic Association v. Pennsylvania Public Utility Commission,* 52 Pa.Cmwlth. 317, 415 A.2d 967 (1980). In that case, we concluded that because PG & W had followed the procedure to invoke the Commission's authority under Section 703(g), and Tripps Park Civic Association had been given notice of the proposed resolution and an opportunity to be heard but failed to use that opportunity, the Commission's amended order did not violate Section 703(g) or Tripps Park Civic Association's due process rights. Additionally, we held that although PG & W had already filed a petition for review with this Court, because the modification in the October 2, 1978 order was made expressly contingent upon the withdrawal by PG & W of its appeal and the order did not become effective until that withdrawal, the prohibitions of Pa. R.A.P. 1701 were avoided. However, because the Commission unlawfully amended its June 21, 2001 order pursuant to Section 703(g) of the Public Utility Code, we need not address whether *Tripps Park* is determinative of this case.

*ity Commission,* 178 Pa.Super. 46, 112 A.2d 826 (1955). What is at issue here, though, is whether Section 703(g) allows the Commission to reconsider an order where the "losing" party has not filed a petition for rehearing under Section 703(f) of the Public Utility Code.[8]

■ In *West Penn Power Company v. Pennsylvania Public Utility Commission,* 174 Pa.Super. 123, 100 A.2d 110 (1953), it was held that the Commission's ability to change an order was not absolute. The Court stated:

> While the doctrine of res judicata [sic] does not apply, in any strict or technical sense, to decisions of administrative agencies, there must be a point at which an administrative ruling on the reasonableness of rates becomes fixed and definite though subject to change or modification in the future on proper proceedings. As an administrative body, the Commission is bound by the due process provisions of constitutional law and by fundamental principles of fairness. Pittsburgh v. Pennsylvania Public Utility Commission, 171 Pa.Super. 391, 395, 90 A.2d 850.[sic] The Commission cannot make a final determination on an ultimate question before it for adjudication and subsequently change such determination without observing the requirements of due process.

*Id.* at 113.

The question then is whether the "notice and comment" procedure used by the Commission in this case satisfies the Section 703(g) requirement that "notice and opportunity to be heard as provided in this chapter," i.e., Chapter 7 of the Public Utility Code, be provided before an order can be amended or rescinded. Chapter 7 provides the procedure by which all complaints, e.g., tariffs, crossings and service complaints, are heard and resolved. It is comprised of three sections Section 701 provides for complaints, i.e., who may file a complaint and the types of complaints that may be filed; Section 702 sets forth the process by which complaints are served on parties; and Section 703 provides for the conduct of hearings.

Specifically, Section 703 sets forth the hearing procedure before the Commission in subsections (a) through (f). It provides that the Commission may dismiss a complaint upon timely satisfaction of the complaint by the party against whom a complaint is filed; however, if the party does not satisfy the complaint within the time specified, the Commission shall fix a time and place for a hearing and serve notice upon parties of interest. It also provides that the Commission may dismiss a complaint without a hearing if a hearing is not necessary in the public interest.[9] The hearing shall be public and a full and complete record shall be made, and the parties are entitled to be heard in person or by attorney and to introduce evidence. Based on that hearing, the Commission is

---

8. Section 703(f) provides:

   **Rehearing.**—After an order has been made by the commission, any party to the proceedings may, within 15 days after the service of the order, apply for a rehearing in respect of any matters determined in such proceedings and specified in the application for rehearing, and the commission may grant and hold such rehearing on such matters. No application for a rehearing shall in any way operate as a supersedeas, or in

   any manner stay or postpone the enforcement of any existing order, except as the commission may, by order, direct. If the application be granted, the commission may affirm, rescind or modify its original order.

9. We note, however, that Section 703 only allows the Commission to dismiss a complaint without a hearing; any other action with regard to a complaint requires a hearing.

required to make findings and file those findings with its order and opinion. After the Commission enters its order, any party to the proceeding may apply for a rehearing in respect to any matters determined in such proceedings; however, such a request for rehearing must be made within 15 days after the service of the order.

In *Scott Paper Company v. Pennsylvania Public Utility Commission*, 126 Pa. Cmwlth. 111, 558 A.2d 914 (1989), we addressed an almost-identical situation to that found in this case and held that merely allowing for "notice and comment" did not satisfy Section 703 hearing requirements or due process. In that case, Philadelphia Electric Company (PECO) filed a tariff supplement to its existing electric tariff containing proposed rates, terms and conditions of electric service to be provided to self-generating customers on December 30, 1985. In response, Scott Paper Company (Scott) filed a complaint against the proposed tariff. Following evidentiary hearings, the ALJ found that the rates and terms presented as part of a stipulation agreement signed by a number of complainants represented the best resolution of the issues and recommended the Commission direct PECO to file tariff supplements in accordance with his recommended decision. On October 9, 1986, the Commission entered an opinion and order adopting that decision with certain noted modifications not involving the firm backup power limitation.

On November 7, 1986, PECO filed a new proposed tariff supplement changing the tariff that the Commission had just approved. Scott filed objections to PECO's compliance filing, contending that it did not comply with the Commission's prior order. Nonetheless, as here, the Commission entered an order on August 13, 1987, allowing PECO to amend its tariff. Contending that the Commission improperly amended its previous order without affording appropriate notice and a meaningful opportunity to be heard, Scott appealed to this Court.

On appeal, acknowledging that the Commission may rescind any order it made pursuant to Section 703(g) of the Public Utility Code, we noted that it may only do so after providing notice and opportunity to be heard to interested parties. Because the Commission failed to afford Scott any meaningful opportunity to be heard on the question when it should have been afforded the opportunity to present evidence upon the issue, we held that the Commission unlawfully amended its earlier order. *See also Lang v. Pennsylvania Public Utility Commission*, 207 Pa.Super. 312, 217 A.2d 750 (1966) (Commission's modification of original order after no more than *ex parte* consultation with company deprived complainants of notice and opportunity to be heard.); *West Penn Power Company* (Where tariff of increased rates filed by power company had been approved by final order of the Commission, order subsequently entered by the Commission without notice or further hearing that such rates were in part excessive was void).

Because the provisions of Section 703 clearly envisioned a full hearing, including the development of a record and a decision by the Commission based on that hearing with full findings, in other words, a new adjudication, the allowance by the Commission to submit comments without the opportunity to present evidence or cross-examine witnesses did not constitute a meaningful opportunity to be heard as provided in Chapter 7 of the Public Utility Code or due process. Therefore, the Commission did not meet the requirements of Section 703(g) and erred in rescinding or amending its prior order based on the Joint Petition alone.[10]

10. Recently, in *ARIPPA v. Pennsylvania Public*    *Utility Commission*, 792 A.2d 636 (Pa.

Accordingly, the Commission's order is vacated and its March 8, 2001 order is reinstated.

Judge LEADBETTER dissents.

### ORDER

AND NOW, this *17th* day of July, 2002, the order of the Pennsylvania Public Utility Commission, No. R 00005050, dated June 21, 2001, is vacated and its March 8, 2001 order is reinstated.

Cmwlth.2002), we addressed the Commission's approval of a non-unanimous settlement stipulation and the difficulty presented as to the scope of review that we were to apply when a party opposing the settlement took an appeal. Although we did not address whether the Commission had the ability to approve such a settlement, as that issue was not raised by the parties nor do we reach it here, in *ARIPPA,* the non-unanimous settlement stipulation was submitted to the Commission before it reached its decision and entered an order and adjudication. In this case, the proposed settlement was reached after the Commission had entered its adjudication and order.