**ARMSTRONG TELECOMMUNICATIONS, INC.,**
Petitioner

v.

**PENNSYLVANIA PUBLIC UTILITIES COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2003.
Decided Nov. 10, 2003.

David Reams Jamieson, Butler, for petitioner.

Elizabeth A. Lion Januzzi, Harrisburg, for respondent.

Norman J. Kennard, Harrisburg, for intervenor, Citizens Telephone Co. of Kecksburg.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Armstrong Telecommunications, Inc. (Armstrong) appeals from an order of the Pennsylvania Public Utilities Commission (Commission) denying the petition filed by 28 "rural" telephone companies, including Citizens Telephone Company of Kecksburg (Citizens), requesting an additional three years "suspension" from their interconnection obligations under the Telecommunications Act of 1996 (Telecom Act)[1] in order to foreclose other companies from providing telephone service in their service area for that period. Armstrong does not appeal the denial of the suspension, but the resurrection of Citizens' "exemption" from competition that was terminated previously in an unrelated Commission exemption proceeding that was affirmed by this Court on appeal.

As can be seen from the introductory paragraph recounting what is before this Court, it is first necessary to provide background as to both the Telecom Act and the other proceeding and appeal to understand the issues in this case.

## I.

### The Telecom Act

### Exemptions and Suspensions From Competition

The Telecom Act was enacted by Congress to create a pro-competitive, deregulated framework for the telecommunications industry by allowing for the entry of

---

1. P.L. 104–104, 110 Stat. 56, 47 U.S.C. §§ 151 *et seq.*

new providers of telecommunications services into the market and to end the longstanding practice of granting and maintaining local exchange monopolies. Under the Telecom Act, the Commission is given certain responsibilities to implement or limit competition in certain instances, including certain provisions of the Telecom Act offering limited protection to rural and small telephone companies from their obligation to provide interconnect services so that those types of companies can be afforded the opportunity to prepare for the introduction of competition while preserving the overall goals of the Telecom Act set forth in Sections 251(b) and (c) of the Telecom Act, which set forth the obligations imposed on incumbent local exchange carriers (ILECs) to provide interconnections to competitive service providers.[2]

Because there was a determination that the public interest was best served by exempting rural telephone companies,[3] which are defined by the "characteristics of its service area," from interconnection requirements of the Telecom Act, Section 251(f)(1) of the Telecom Act provides the automatic exemption to rural carriers until the following occurs:

**(A) Exemption**

Subsection (c) of this section shall not apply to a rural telephone company until (i) such company has received a bona fide request for interconnection, services, or network elements, and (ii) the State commission determines (under subparagraph (B)) that such request is not unduly economically burdensome, is technically feasible and is consistent with section 254 of this title (other than subsections (b)(7) and (e)(1)(D) thereof).

**(B) State termination of exemption and implementation schedule**

The party making a bona fide request of a rural telephone company for interconnection, services, or network elements shall submit a notice of its request to the State commission. The State commission shall conduct an inquiry for the

---

**2.** Under 47 U.S.C. § 251(b)(1), ILECs have duties with respect to resale of their services by competitors; under § 251(b)(2), the duty to provide for the portability of their subscribes telephone numbers; under § 251(b)(3), the duty to provide dialing parity; under § 251(b)(4), the duty to afford access to their poles, ducts, conduits and rights-of-ways; and under § 251(b)(5), the duty to establish reciprocal compensation agreements. Under 47 U.S.C. § 251(c), each ILEC also has a duty, *inter alia,* to negotiate in good faith with prospective competitors seeking to interconnect with its network and to provide interconnections to a prospective competitor at any technically feasible point with the carrier's network on raters, terms and conditions that are just, reasonable and nondiscriminatory.

**3.** 47 U.S.C. § 153 defines "rural telephone company" as follows:

The term "rural telephone company" means a local exchange carrier operating entity to the extent that such entity—

(A) provides common carrier service to any local exchange carrier study area that does not include either—

(i) any incorporated place of 10,000 inhabitants or more, or any part thereof, based on the most recently available population statistics of the Bureau of the Census; or

(ii) any territory, incorporated or unincorporated, included in an urbanized area, as defined by the Bureau of the Census as of August 10, 1993;

(B) provides telephone exchange service, including exchange access, to fewer than 50,000 access lines;

(C) provides telephone exchange service to any local exchange carrier study area with fewer than 100,000 access lines; or

(D) has less than 15 percent of its access lines in communities of more than 50,000 on the date of enactment of the Telecommunications Act of 1996.

purpose of determining whether to terminate the exemption under subparagraph (A). Within 120 days after the State commission receives notice of the request, the State commission shall terminate the exemption if the request is not unduly economically burdensome, is technically feasible, and is consistent with section 254 of this title (other than subsections (b)(7) and (e)(1)(D) thereof). Upon termination of the exception, a State commission shall establish an implementation schedule for compliance with the request that is consistent in time and manner with Commission regulations.

Subsection (C) makes the exemption inapplicable if the "rural telephone company" began to provide video programming after February 8, 1996, stating:

**(C) Limitation on exemption**

The exemption provided by this paragraph shall not apply with respect to a request under subsection (c) of the section, from a cable operator providing video programming, and seeking to provide any telecommunications service, in the area in which the rural telephone company provides video programming. The limitation contained in this subparagraph shall not apply to a rural telephone company that is providing video programming on February 8, 1996.

"Small" rural local exchange carriers, which are defined by their size based on the number of customers that they serve nationwide, are not given an exemption from competition, but may qualify for a suspension from interconnection obligations under 47 U.S.C. § 251(f)(2), which provides:

**(f)(2) Exemptions, suspensions and modifications for rural carriers.** A *local exchange carrier with fewer than 2 percent* of the Nation's subscriber lines installed in the aggregate nationwide

may petition a State commission *for a suspension or modification of the application of a requirement or requirements of subsections (b) and (c) to telephone exchange service facilities specified in such petition.* The State commission shall grant such petition to the extent that, and for such duration as, the State commission determines that such suspension or modification—

(A) is necessary—

(i) to avoid a significant adverse economic impact on users of telecommunication services generally;

(ii) to avoid imposing a requirement that is unduly economically burdensome; or

(iii) to avoid imposing a requirement that is technically infeasible; and

(B) is consistent with the public interest, convenience, and necessity.

(Emphasis added.)

While the standards for maintaining an exemption and obtaining a suspension are substantially the same, the one major difference is that an exemption for rural telephone companies remains in place until there is a bona-fide request for interconnection while a "small" rural telephone company has to apply to obtain a suspension from its interconnect obligations to allow competition in its service areas. Also, different obligations are imposed on the Commission and the local companies to make out a request for an exemption or suspension.

## II.

## Exemption Proceeding

**Armstrong v. Citizens**
**Docket Nos. P–00971229; A–310583**

### A.

Armstrong is a Pennsylvania corporation affiliated with The Armstrong Group

of Companies (The Armstrong Group) which owns, operates and/or provides telecommunications, cable TV and security services. The Armstrong Group owns/operates two jurisdictional rural ILECs within the Commonwealth and four local exchange carriers (LECs) in New York, Maryland and West Virginia. Citizens is a rural ILEC in the Commonwealth as well as a single-exchange local exchange carrier with 5,142 access lines. It has a wholly-owned subsidiary, Citizens Communications, which, in turn, has a wholly-owned subsidiary, Citizens Cable.

In 1998, Armstrong filed two applications with the Commission at Docket Number A–310583 to become a facilities-based competitive local exchange carrier (CLEC) and a non-facilities-based CLEC, both in the service territory of Citizens and Citizens Cable, which provided cable television service in the relevant telephone service territory that was the subject of Armstrong's applications. The petitions were captioned as follows:

> Application of Armstrong Communications, Inc., for Approval to Offer, Render, Furnish, or Supply Facilities–Based Competitive Local Exchange Carrier Telecommunication Services in the Service Territory of Citizens Telephone Company of Kecksburg
>
> Application of Armstrong Communications, Inc. for Approval to Offer, Render, Furnish, or Supply Competitive Local Exchange Carrier Telecommunication Services Through Non–Facilities–Based Operations in the Service Territory of Citizens Telephone Company of Kecksburg

To provide the non-facilities based CLEC services, Armstrong requested interconnection services from Citizens pursuant to 47 U.S.C. §§ 251(b) and (c), thereby seeking to have Citizens exemption from competition removed.

Citizens opposed both of Armstrong's applications to provide service and countered by filing a petition with the Commission under 47 U.S.C. § 251(f)(2) seeking suspension of its interconnection obligations under Sections 251(b) and (c). That petition was at Docket No. P–00971229 and captioned: "Petition for Suspension Under Section 251(f)(2) of the Telecommunications Act of 1996 of Citizens Telephone Company of Kecksburg." Both parties disputed the interconnection obligations under § 251(f) of the Telecom Act.

The Administrative Law Judge (ALJ) issued a recommended decision on March 10, 1998, concluding that Armstrong: 1) failed to meet its burden of proving technical fitness as a facilities-based CLEC; and 2) failed to prove that it was technically fit to render the proposed non-facilities-based CLEC services and that there was a public demand or need for those proposed services. The ALJ also concluded that Citizens did not meet its burden of proof on its suspension request under 47 U.S.C. § 251(f)(2), but that Citizens was exempt from the interconnection obligations of the Telecom Act under 47 U.S.C. § 251(f)(1)(A), and that its providing of cable service did not exclude it from the exemption provision of 47 U.S.C. § 251(f)(1)(C) because substantial efforts were completed for the provisioning of video programming as early as December of 1993.[4] Both parties filed exceptions from the ALJ's decision with the Commission.

---

4. The reproduced record does not provide the ALJ's decision; however, in the Commission's decision, it explains that the ALJ concluded that Citizens did not forfeit its exemption by the provision of cable video service because "those efforts were in compliance with federal regulations pertaining to the necessary steps to implement video programming.

In its April 28, 1999 decision and order, the Commission did not adopt the ALJ's findings and recommendations on both the continuing suspension from competition for Citizens and the denial of Citizens' request for an exemption. On the issue of Armstrong's fitness to be a facilities-based CLEC, it found that Armstrong was technically and financially fit to provide facilities-based services as a matter of state and federal law and granted it a Certificate of Public Convenience. On the issue of whether Armstrong was fit to be a non-facilities-based CLEC, the Commission granted Armstrong's application finding that Armstrong was technically and financially fit to provide the service by virtue of its expertise and its resources in providing both cable and telecommunication services, but conditioned it upon Citizens' exemption and suspension pursuant to Section 251(f) of the Telecom Act.

As to the Section 251(f)(1) exemption issue, the Commission found that Citizens was providing cable service on the date the Telecom Act was enacted and Citizens "had completed every regulatory hurdle incident to providing cable services as of February 8, 1996." (Commission's April 28, 1999 decision at 23, 1999 WL 632812 at *11.) As to whether the exemption should be removed, the Commission found that an exemption was necessary and appropriate under Section 251(f)(1)(a) because interconnection was economically burdensome compared to Armstrong's financial and technical ability to deliver telecommunica-

tions over its distinctly independent cable network. The Commission then recognized Citizens' exemption under Section 251(f)(1) *"to run simultaneously with, and to expire concurrently with, any suspension or modification under Section 251(f)(2) granted to Citizens."* (Commission's April 28, 1999 decision at 24, 1999 WL 632812 at *11.) (Emphasis added.)

As to the Section 251(f)(2) suspension, the Commission found that Citizens clearly qualified for the limited suspension and modification of its obligations that the Commission had provided to other rural telephone companies in its July 10, 1997 order.[5] The Commission stated:

Such relief is necessary in order to avoid an adverse economic impact on users of telecommunication services in rural areas. (Citizens Stmt. 3, p. 18; Tr., p. 158). The denial of Section 251(f)(2) relief for Citizens, as opposed to the other rural telephone companies who were granted relief in our *July 1997 Order*, will result in a short-term focus on high volume customers in Citizens service area. (Citizens Stmt. 5, pp. 3–6, 10). Citizens customers, unlike telephone customers in the other rural areas discussed in our *July 1997 Order*, will experience immediate and profound impacts to their costs for basic service. That is because Citizens, as did the carriers granted relief in our *July 1997 Order*, needs time to gradually reduce its reliance on the embedded subsidies

---

These steps, taken in compliance with state and federal laws relative to the provision of cable service, culminated in the provision of actual service to a customer on May 10, 1996." (Commission's April 28, 1999 decision at 19, 1999 WL 632812 at *8.)

5. On February 20, 1997, a group of 18 rural telephone companies filed a petition pursuant to Section 251(f)(2) of the Telecom Act requesting a temporary suspension of their Sec-

tions 251(b) and (c) interconnection requirements and of facilities-based competition. Citizens was not one of the original parties, but petitioned to intervene. It appears from the Commission's April 28, 1999 order that its petition was granted. On July 10, 1997, the Commission entered an order granting a two-year suspension of their interconnection obligations with the right to seek three additional one-year extensions.

provided by significant local revenues and to prepare for the competition.

Relief is also necessary under Section 251(f)(2)(A)(ii) in order to avoid imposing an economically burdensome requirement. Given Citizens' resources, it needs a limited suspension in order to properly prepare to provide for the competition envisioned by interconnection and resale under TA–96 [Telecom Act]. Section 251(f)(2)(A)(iii) also dictates relief because the denial of relief imposes interconnection requirements that appear to be technically not feasible at this time. However, this dilemma must, of necessity, be short-term given the limited suspension that is granted in light of that consideration and the rapid technological changes underway. **Citizens will not be heard to complain, five (5) years from July 1997, that further suspension is necessary because of considerations of technical feasibility absent truly compelling circumstances.** (Emphasis added.)

\* \* \*

Accordingly, *we shall grant Citizens a suspension through July 10, 2000, with the option to apply for two (2) one (1)-year extensions.*

(Commission's April 28, 1999 decision at 29–30, 1999 WL 632812 at \*14–\*15.) (Emphasis added.) The Commission then ordered, in relevant part, the following:

2. That the Application of Armstrong Communications, Inc. at Docket No. A–310583 for authority to operate as a non-facilities-based Competitive Local Exchange Carrier within the service terri-

tory of Citizens Telephone Company of Kecksburg is granted, conditioned upon Citizens' exemption and suspension status pursuant to 47 U.S.C. § 251(f), consistent with this Opinion and Order.

\* \* \*

11. That upon compliance with this Opinion and Order and the establishment of filed rates and approval of Initial Tariff(s), a Certificate of Public Convenience be issued authorizing Armstrong Communications, Inc., to furnish services as a facilities-based Competitive Local Exchange Carrier at Docket No. A–310583, within the service territory of Citizens Telephone Company of Kecksburg consistent with this Opinion and Order. *After the expiration of the Section 251(f) exemption and suspension period for Citizens Telephone Company of Kecksburg* and upon further compliance with this Opinion and Order and the establishment of filed rates and approval of Initial Tariff(s), *a Certificate of Public Convenience shall be issued authorizing Armstrong Communications, Inc., to furnish services as a non-facilities-based Competitive Local Exchange Carrier at Docket No. A–310583,* within the service territory of Citizens Telephone Company of Kecksburg, consistent with this Opinion and Order.[6]

\* \* \*

14. That the Petition of Citizens Telephone Company of Kecksburg for a stay of the requirements of Section 251(b) and for a stay of the requirements of Subsections 251(c)(1), (2), (4), (5), and (6)

---

**6.** In the Commission's conclusion, it stated: "[A] t the conclusion of Citizens' exemption and suspension, Armstrong can, along with any other interested competitor, then seek interconnection devoid of the contentious Sections 251(f)(1) or 251(f)(2) considerations that have characterized this proceeding." (Commission's April 28, 1999 decision at 32, 1999 WL

632812 at \*16.) (Emphasis added.) Although the conclusion seems to indicate that to begin service Armstrong has to again apply for an interconnection, the order grants Armstrong the right to operate within Citizens' service area beginning no later than July 2002.

of the Telecommunications Act of 1996, which is requested pursuant to Sections 251(f)(2) of the Telecommunications Act of 1996 is granted, consistent with this Opinion and Order.

15. That Citizens Telephone Company of Kecksburg is granted a limited suspension until July 10, 2000, from the requirement of Section 251(c)(3) of the Telecommunications Act of 1996, with the potential for two (2) one (1)-year renewals, consistent with the parameters set forth in *Petition of Rural and Small ILEC's for Commission Action Pursuant to Section 251(f)(2) and 253(f)(b) of the Telecommunications Act of 1996* and *Petition of Citizens Telephone Company of Kecksburg to Intervene in PUC Docket No. P–00971177 and to Suspend the Interconnection Requirements of the Telecommunications Act of 1996 Pursuant to Sections 251(f)(2) and 253(b)*, Docket Nos. P–00971177 and P–00971188 (July 10, 1997). (Emphasis in original.)

### B.

### COMMONWEALTH COURT DECISION

### Nos. 1359 and 1463 C.D.1999

Both Armstrong and Citizens filed cross-petitions for review with this Court from the Commission's April 28, 1999 order.[7] Relevant to the present matter, Citizens argued that the Commission erred by holding that under Section 251(f)(1), a rural exemption was of a limited term and that it would automatically terminate on July 10, 2000, because the drafters of Section 251(f)(1)(A) contemplated that the ex-

emption should remain in place until contemporaneous proof was made to support the dissolution of the exemption. Rejecting that contention, in *Armstrong Communications, Inc. v. Pennsylvania Public Utility Commission*, 768 A.2d 1230, 1236 (Pa.Cmwlth.2001), and adopting the Commission's interpretation of the provision, we affirmed, stating:

> *The Commission was within its power to rule that the exemption was not perpetual and to set a timetable for its removal.* The Commission concluded that a two-year suspension struck an appropriate balance accommodating the needs of Citizens, a rural LEC, for time to facilitate competition with its competitors for access to rural Pennsylvania competitors. Thus, the Commission properly held that Citizens qualifies for the same limited suspension and modification of its obligations under Section 251(f)(2) that the Commission provided to other rural telephone companies in its July 1997 Order. The two-year suspension is temporary insulation from competition, and we emphasize that Citizens should use the suspension period to prepare for future competition in keeping with the Act's ultimate goal of promoting competition. (Emphasis added.)

### III.

### This Appeal

### A.

### The Group Suspension Petition

### Docket No. P–0097117

On June 7, 2002, in a matter totally unrelated to the previously recounted case,

---

7. Armstrong argued that the Commission erred in failing to terminate the rural exemption of Section 251(f)(1)(A) upon its receipt of Armstrong's request under Section 251(f)(1)(B). We held that there was substan-

tial evidence to support the Commission's decision to deny Armstrong's request because it was economically burdensome to do so. This issue has not been raised in the present appeal.

two groups of rural ILECS filed with the Commission at Docket No. P–0097117[8] a petition for relief seeking a 36–month suspension of their interconnection obligations under Sections 251(b)(1) and (c) of the Telecom Act. Citizens was not initially a party, but it filed a joinder petition. These parties, including Citizens, had previously received a five-year suspension from the Commission from 1997 to 2002 pursuant to the Commission's July 10, 1997 order. *See* footnote 5, *supra.*[9] Armstrong objected to Citizens' request because the Commission had previously found in the exemption proceeding, which we affirmed, that Citizens' suspension was going to expire no later than July 2002 and that no further suspension should be granted.

Without holding a hearing, by order dated January 15, 2003, the Commission **denied** the rural telephone companies' request for further suspension, noting that in its July 10, 1997 order, they had been granted an effective five-year suspension from their interconnection obligations.[10] In denying the requested relief, the Commission specifically stated: "[W]e stress

that the *standing exemption,* under § 251(f)(1), for rural ILECs is undisturbed by our order." (Commission's decision at 1–2.) (Emphasis added.)

Addressing Armstrong's objection to the suspension extension, the Commission stated in a footnote that even though the only matter before it was the request for a three-year suspension, the exemption for Citizens remained in effect unless a bona fide request for interconnection was received and a contemporaneous offer of proof supported the termination of the exemption. It stated:

A question was raised regarding the continued exemption of Citizens Telephone Company of Kecksburg, given this Commission's decision in *Applications of Armstrong Communications, Inc.; Petitions of Citizens Telephone Company of Kecksburg for Suspension* ... Docket No. A–310583, [1999 WL 632812] P–00971229, Order entered April 28, 1999 [in the Exemption Proceeding]. Armstrong comments that Citizens' request for joinder should be denied because Citizens' standing rural

---

**8.** Docket No. P–00971177 has the following caption:

Petition of Rural Incumbent Local Exchange Carriers for a 36–month Suspension of Interconnection Requirements Limited to Only Those Requirements Set Forth in § 251(b)(1) and (c) of the Telecommunications Act of 1996
Petition to Join and for Relief Under § 251(f)(2) of the Telecommunications Act of 1996

**9.** The Commission essentially was granting the same five-year suspension to Citizens when in the exemption proceeding at docket nos. P–00971229 and A–310583 it granted Citizens a suspension through July 10, 2000, with the option to apply for two (2) one (1)-year extensions. Ultimately, in both cases, Citizens was granted a five-year exemption from 1997–2002.

**10.** In its July 10, 1997 order, the Commission stated:

As an additional caution, we note that any subsequent relief sought by a Petitioner pursuant to this Opinion and Order must present competent evidence that such relief is necessary under Section 251(f)(2). A Petitioner requesting additional relief must demonstrate why it needs any additional time to secure the resources to meet the goals of TA–96 and Chapter 30. A Petitioner must also demonstrate what action it has taken to comply with Chapter 30's mandate regarding alternative regulation and network deployment. A Petitioner must further demonstrate what progress a Petitioner has made in deploying an advanced telecommunications network to the public schools, library and other public facilities serving rural Pennsylvania.
*Commission's July 10, 1997 order at 28–29.*

exemption was terminated by our order in [the Exemption Proceeding]. However, we conclude, as asserted by Citizens, that [the Telecom Act] intends that the exemption stand unless a bona fide request for interconnection is received and a contemporaneous offer of proof supports the termination of the exemption. In fact, [the Telecom Act] grants this Commission authority to modify or suspend the interconnection obligations of the rural ILEC's at any time. In exercise of this authority, we conclude, Citizens, like the other petitioners, shall continue to be entitled to the exemption, unless and until challenged by bona fide request for interconnection. If a bona fide request for interconnection is made to Citizens, then our decision in [the Exemption Proceeding] will be relevant to termination of the exemption. However, Citizens will be afforded the opportunity to show a change in circumstance.[11]

(Commission's January 15, 2003 decision at 2, ftnt. 1.) The Commission did not comment on the fact that it had approved Armstrong's application request for interconnection beginning no later than July 2002, and that this Court had affirmed the Commission's determination on appeal.

■ Armstrong filed a petition for reconsideration of the Commissions' January 15, 2003 order raising the issue of Citizens' "continued" exemption which the Commission denied, reaffirming its holding that Citizens was entitled to the continuation of its rural exemption unless it was challenged by a bona fide request for interconnection. (See Reconsideration Order of March 21, 2003.) The Commission also stated in a footnote that it was authorized under Section 703(g) of the Public Utility Code (Code),[12] 66 Pa.C.S. § 703(g), to amend or reverse its own prior order after notice and opportunity to be heard was afforded to the parties, and because Armstrong received notice of Citizens' petition seeking an extension of the suspension and availed itself of the opportunity to be heard in opposition to that petition and made the same arguments at that time that it was now making, the requirements of Section 703(g) of the Code were satisfied and "the Commission was authorized to alter its prior determination." (Commission's decision at 4, footnote 1.) Because the Commission found that Citizens still had a standing exemption despite the fact that the present request was at a different docket number, involved different parties, and was a separate matter from the one in which it previously found that Citizens' exemption had expired, Arm-

**11.** What the Commission appears to be saying in this footnote is that its interpretation of Section 251(f)(1) of the Telecom Act in the exemption proceeding is that it could put limits on an exemption and have it set to expire in the future if it was wrongly decided. In effect, it is saying that when an application for interconnection is received, it cannot be approved at some date in the future but must be decided on the state of affairs that exist at the time of the hearing. Without saying so, what it appears to be doing is, *sua sponte*, reversing its decision and our decision affirming the exemption proceeding. Whether an agency, when considering other cases, is free to change its interpretation of a statute once a court, including our Supreme Court, has

adopted its interpretation of the language, as we did in this case, has not been addressed by the courts of this Commonwealth. *But see Good Samaritan Hospital v. Shalala*, 508 U.S. 402, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993). Whether an agency can reverse a final order affirmed on appeal based on its new interpretation of the law is even more problematical.

**12.** 66 Pa.C.S. § 703(g) provides:

**Rescission and amendment of orders.** The commission may, at any time, after notice and after opportunity to be heard as provided in this chapter, rescind or amend any order made by it.

strong filed the present appeal.[13]

## B.

With that long introduction, we can now proceed to the substance of Armstrong's appeal. Armstrong contends that the Commission's January 15, 2003 order violated its equal protection and due process rights because it unilaterally reinstated Citizens' rural exemption that had already expired when it reinstated Citizens' "continued" exemption in the suspension proceeding that had previously been terminated in the exemption proceeding. It argues that those rights had been violated because it did not receive notice that the reinstatement of Citizens' Section 251(f)(1) rural exemption was at issue in that suspension proceeding, and it was not afforded an opportunity to be heard, to present testimony and to cross-examine witnesses on the issue of that reinstatement. Additionally, not denying that the Commission has the discretion to amend or revise a prior order, it argues that the Commission abused its discretion and committed an error of law by reversing or amending a prior order because Section 703(g) of the Public Utility Code requires it to provide notice and an opportunity to be heard.[14] We agree.

■ Ignoring whether due process requires that a party receive notice that an order is going to be amended and that the party has a right to the same type of hearing from which the order emanated, Section 703(g) of the Public Utility Code requires that notice be provided and an opportunity to be heard to those parties who may be affected by a change in its order. The Commission argues, though, that it met those requirements of Section 703(g) when "Armstrong received notice of Citizens' petition seeking an extension of the suspension" and "Armstrong availed itself of the opportunity to be heard in opposition to that petition and did in fact make the same arguments now raised as the basis for reconsideration." (March 21, 2003 Reconsideration Order at 4). What the Commission's argument fails to acknowledge is that notice to Armstrong in the suspension proceeding of Citizens' petition seeking a 36–month extension of its suspension had nothing to do with the exemption proceeding involving Armstrong and Citizens because it was a totally separate, unrelated proceeding. The issue of reinstating Citizens' rural exemption was not at issue before the Commission at Docket No. P–0097117.[15]

**13.** Our scope of review of the Commission's order is limited to determining whether constitutional rights have been violated, an error of law committed, or whether findings of fact and conclusions of law are supported by substantial evidence. *City of Chester v. Pennsylvania Public Utility Commission*, 798 A.2d 288 (Pa.Cmwlth.2002.)

**14.** Armstrong also points out that the Commission provided in its April 28, 1999 Order:
Accordingly, we shall recognize Citizens' exemption under Section 251(f)(1), to run simultaneously with, and *to expire concurrently with, any suspension or modification under Section 251(f)(2) granted herein to Citizens.* (Emphasis added.)
It argues that this issue was affirmed by this Court in the exemption proceeding leaving no

question that Citizens' rural exemption was terminated at the expiration of its Section 251(f)(2) suspension, and if it is required to pursue Section 251(f)(1)(B) termination proceedings before having the right to pursue Section 251(c) interconnection services, that would be in direct conflict with this Court's decision making that decision a nullity and would constitute an error of law. We need not address this issue because of the way we have decided this matter. *But see* footnote 12.

**15.** This is also evidenced by the August 17, 2002 *Pennsylvania Bulletin* notice of Citizens' petition to join in the suspension proceeding which was quoted in its entirety and indicated that the only information in the public notice was related to Citizens' request to seek to join

Additionally, the notice and comment procedure used in this case does not satisfy Section 703(g)'s hearing requirement. In *Popowsky v. Pennsylvania Public Utility Commission*, 805 A.2d 637 (Pa.Cmwlth. 2002), it was made clear that the Commission must conduct an evidentiary hearing before rescinding or amending a prior order under this section of the Code, stating:

In *Scott Paper Company v. Pennsylvania Public Utility Commission*, 126 Pa. Cmwlth. 111, 558 A.2d 914 (1989), we addressed an almost-identical situation to that found in this case and held that merely allowing for "notice and comment" did not satisfy Section 703 hearing requirements or due process.

\* \* \*

Because the provisions of Section 702 clearly envisioned a full hearing, including the development of a record and a decision by the Commission based on that hearing with full findings, in other words, a new adjudication, the allowance by the Commission to submit comments without the opportunity to present evidence or cross-examine witnesses did not constitute a meaningful opportunity to be heard as provided in Chapter 7 of the Public Utility Code or due process. Therefore, the Commission did not meet the requirements of Section 703(g) and erred in rescinding or amending its prior order based on the Joint Petition alone.

*Popowsky*, 805 A.2d at 643.

■■■ While, where appropriate, the Commission can amend a prior order, it must do so in a proceeding that relates back to the proceeding in which the original order was issued. In this case, it attempted to impermissibly amend its pre-

---

the petition filed July 7, 2002, by the rural ILECS for the identical relief sought of a 36–month extension of the suspension from interconnection obligations. In no way, shape or

vious order terminating an exemption and granting a certificate of public convenience in a separate unrelated proceeding that denied a request by a group of rural ILECs for a 36–month suspension extension of a five-year suspension that had previously been granted in 1997. For its order in the exemption proceeding to be amended, a proceeding must be commenced that complies with Section 703(g) of the Code's notice and hearing requirements.

Accordingly, that portion of the Commission's January 15, 2003 order reinstating Citizens exemption is vacated.

### ORDER

AND NOW, this 10th day of November, 2003, that portion of the Pennsylvania Public Utilities Commission order dated January 15, 2003, reinstating Citizens Telephone Company of Kecksburg's exemption is vacated.

---

form would Armstrong have had any reason to make any argument regarding a reinstatement of Citizens' continuing exemption.