**EMPORIUM WATER COMPANY,**
Petitioner

v.

**PUBLIC UTILITY COMMISSION,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2004.

Decided Oct. 5, 2004.

---

Thomas J. Sniscak, Harrisburg, for petitioner.

W. Blair Hopkin, Harrisburg, for respondent.

Christine Maloni Hoover, Harrisburg, for intervenor, Office of Consumer Advocate.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Emporium Water Company (Utility)[1] petitions for review of the September 5,

2003 order of the Pennsylvania Public Utility Commission (Commission) denying the Utility's petition for relief; ordering it to file tariffs or tariff supplements containing proposed rates, provisions and regulations consistent with the Commission's March 8, 2001 opinion; and ordering it to file a plan for refund to address the difference in rates established in the March 8, 2001 opinion and those actually charged by the Utility within 30 days of the order.

On March 31, 2000, the Utility filed Supplement No. 4 to Tariff Water–Pa. P.U.C. No. 5 to become effective May 31, 2000, in which it proposed an increase in the base rates it charged for public utility service, calculated to produce $259,937 in additional annual revenue, based on a future test year ending September 30, 2000. The proposed increase would have resulted in an average 40.3% increase in each residential customer's quarterly bill from $58.25 to $81.75. Numerous parties, including the Borough of Emporium and Irwin A. Popowsky, acting as Consumer Advocate (Consumer Advocate), filed formal complaints to the proposed rate increase alleging, *inter alia*, that the proposed rates, rules and regulations were unjust, unreasonable and in violation of the law. After a hearing before Administrative Law Judge James D. Porterfield, the Commission ordered that the Utility file tariffs or tariff supplements containing proposed rates, provisions, rules and regulations consistent with its findings and designed to produce no more than $680,004 in annual base rate operating revenue. The Utility then filed a petition for review with this Court on March 16, 2001.[2] Acting in its representative capacity, the Commission's Law Bureau (Law Bureau) filed a praecipe

---

1. The Utility began furnishing water service to the public in 1886. Currently, it furnishes water service to approximately 1,557 customers located in the Borough of Emporium and parts of Shippen Township, Cameron County, Pennsylvania.

2. Because it was not aggrieved by the Commission's March 8, 2001 order, the Consumer

for appearance on behalf of the Commission on March 23, 2001.

Without the consent of the other parties, the Utility and the Law Bureau filed a joint petition for full settlement which was at variance with its prior decision,[3] and on June 21, 2001, the Commission entered an order adopting the full settlement attached to the joint petition in its entirety. The Consumer Advocate appealed the Commission's June 21, 2001 order to this Court. We vacated the Commission's approval because no hearing was held regarding the settlement, and the Commission's March 8, 2001 order permitting $680,004 in annual revenues was reinstated. See *Popowsky v. Pennsylvania Public Utility Commission*, 805 A.2d 637 (Pa.Cmwlth.2002).[4]

■ Because the Utility had been charging rates that were set forth in the proposed settlement rather than those authorized by the Commission's March 8, 2001 order from June 29, 2001 to October 21, 2003, the Commission requested that the Utility refund its customers. The Utility filed a petition for relief claiming that there was no need to refund its customers because the amount of revenue that was to be raised by the proposed tariff, $680,004, was not generated by the tariff.[5] The Commission denied the relief and additionally ordered refunds for the difference between the tariff rates authorized under the Commission's March 8, 2001 order and the tariff rates that were declared unlawful by this Court in *Popowsky*. This appeal followed.[6]

■ On appeal, the Utility argues that a refund should not have been ordered because it collected less than the $680,004 in actual annual revenues authorized by the Commission's March 8, 2001 order during each year in the refund period. It argues, however, that the authorized revenues are the key and ultimate determination in a rate case, and because revenues are the ultimate determination, it should not matter whether the actual rates it charges its customers are in excess of the applicable rate contained in an existing and effective tariff, but rather, only whether its annual operating revenue is less than the designated annual base rate operating revenue approved by the Commission.

What that argument ignores is that authorized revenues are not the key and

---

Advocate did not appeal that decision; however, intending to support the Commission in defense of its March order, it filed a notice of intervention.

3. Among other things, the settlement permitted the Utility to collect an additional $24,129 in annual operating revenue on top of the $33,371 increase previously approved by the Commission in its March 8, 2001 order.

4. The Commission and the Utility each filed a petition for allowance of appeal with the Pennsylvania Supreme Court seeking review of this Court's decision in *Popowsky*. The Supreme Court denied both petitions. *See Popowsky v. Public Utility Commission*, 573 Pa. 660, 820 A.2d 163 (2003) and *Popowsky v. Public Utility Commission*, 577 Pa. 704, 847 A.2d 60 (2004).

5. It alleged that its rates from June 29, 2001 to October 21, 2003, were not in violation of the Commission's March 2001 order because such rates produced an annualized revenue in 2001 of $650,873, and in 2002 of $655,158, which were both less than the allowable annual revenue of $680,004 in the March 8, 2001 order.

6. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the Commission's findings of fact, determinations or order are supported by substantial evidence. *Equitable Gas Company v. Pennsylvania Public Utility Commission*, 106 Pa.Cmwlth. 240, 526 A.2d 823, *petition for allowance of appeal denied*, 516 Pa. 644, 533 A.2d 714 (1987). We will not substitute our evaluation of the evidence for that of the Commission. *Id.*

ultimate determination[7] because the Public Utility Code (Code), 66 Pa.C.S. §§ 101–3316, makes it clear that the ultimate and only determination in a rate case is the setting of just and reasonable rates. Section 315 of the Code, 66 Pa.C.S. § 315, provides that in a rate case "involving any proposed or existing rate of any public utility, or in any proceedings upon complaint involving any proposed increase in rates, the burden of proof to show that the rate involved is just and reasonable shall be upon the public utility." Section 1308 of the Code, 66 Pa.C.S. § 1308, provides that "[u]nless the commission otherwise orders, no public utility shall make any change in any existing and duly established rate." In addition, Section 1309 of the Code, 66 Pa.C.S. § 1309, provides that "[w]henever the commission, after reasonable notice and hearing, upon its own motion or upon complaint, finds that the existing rates of any public utility for any service are unjust, unreasonable, or in anyway in violation of any provision of law, the commission shall determine the just and reasonable rates, including maximum or minimum rates, to be thereafter observed and in force, and shall fix the same by order to be served upon the public utility, and such rates shall constitute the legal rates of the public utility until changed as provided in this part." *See also Pennsylvania Electric Company v. Pennsylvania Public Utility Commission,* 509 Pa. 324, 502 A.2d 130 (1985), *certiorari denied,* 476 U.S. 1137, 106 S.Ct. 2239, 90 L.Ed.2d 687 (1986).

From the foregoing, it is clear that a utility cannot change rates and not be subject to a refund merely because its actual annual revenue is less than the designated annual base rate operating revenue approved by the Commission. Furthermore, Section 1312(a) of the Code, 66 Pa.C.S. § 1312(a), provides that:

(a) GENERAL RULE.—If, in any proceeding involving rates, the commission shall determine that *any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron,* in consequence of such unlawful collection, within four years prior to the date of the filing of the complaint, together with interest at the legal rate from the date of each such excessive payment. In making a determination under this section, the commission need not find that the rate complained of was extortionate or oppressive. Any order of the commission awarding a refund shall be made for and on behalf of all patrons subject to the same rate of the public utility. The commission shall state in any refund order the exact amount to be paid, the reasonable time within which payment shall be made, and shall make findings upon pertinent questions of fact.

66 Pa.C.S. § 1312(a). (Emphasis added.)

In this case, it is undisputed that the Utility was charging rates from June 29,

---

7. What the Utility also ignores is that annualized revenue is an estimation itself based upon estimates of rates of return, revenues, expenses and capital bases in a test year used to predict the operating results. A change in consumption or in any of the factors used in setting rates does not authorize a utility to raise rates or require it to lower rates. For example, in a year where there is a dry hot summer because of increased water consumption, the annualized revenues for a water company may be in excess of what the Commission ordered, but as long as the rates charged are in accord with the approved tariff, no refund is required.

2001 through October 21, 2003, in excess of the amount approved of in tariff Supplement No. 9, the last effective tariff. Because the Commission determined that, "to the extent the Utility's rates were not developed using the assumptions and design directed in our March 8th [2001] Order, they were not in compliance with either the March 8th [2001] Order or the Commonwealth Court's Order in *Popowsky*" (Commission's September 5, 2003 order at 8), it had the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection, within four years prior to the date of the filing of the complaint, together with interest at the legal rate from the date of each such excessive payment. The Commission did not err in directing the Utility to file a tariff complying with the March 2001 order in all respects and to file a plan for a refund.

■ The Utility also argues that even if there was a legal basis for the Commission to order the refunds, the Commission abused its discretion or committed an error of law by treating refunds as mandatory and failing to follow appellate decisions requiring the Commission to consider a utility's current financial condition in deciding whether a refund is warranted. Although the Utility properly points out that the Commission's authority to order refunds pursuant to Section 1312(a) of the Code is discretionary, *see National Fuel Gas Distribution Corporation v. Pennsylvania Public Utility Commission,* 76 Pa. Cmwlth. 102, 464 A.2d 546 (1983), the Utility did not present any evidence of any imminent financial collapse or service failure that would justify retaining the ratepayer's money. The only evidence the Utility offered into the record was a two-page appendix demonstrating that its actual annual operating revenue was less than the designated $680,004 annual base rate operating revenue. Because the Commission did not abuse its discretion in finding that the fact that the Utility's actual annual operating revenue was less than the designated $680,004 alone was insufficient to justify not requiring the Utility to make refunds in excess of the approved tariff, we will not disturb that holding on appeal.[8]

Accordingly, the order of the Commission is affirmed.

### ORDER

AND NOW, this 5th day of October, 2004, the Order of the Public Utility Commission at No. R–00005050, dated September 5, 2003, is affirmed.

---

8. The Utility also argues that where the Commission determines a level of annual revenues necessary to cover the Utility's costs of providing service and dedication of its private property to public service and orders a refund despite annual revenue collections that are below the permitted level of annual revenues, the Commission has unconstitutionally confiscated the Utility's property. What this again ignores is that the Utility was not guaranteed to collect certain revenues, but rather only that at the time the rates were issued, they provided just and reasonable return. *Pennsylvania Electric Company.* If the Utility's actual revenues are inadequate to meet its legitimate expenses and provide a fair return, it should have employed the proper avenues of rate relief available by filing for rate relief under the Code.